# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39397**

_____

**UNITED STATES**
*Appellee*

**v.**

**Jason M. BLACKBURN**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 22 August 2019

_____

*Military Judge:* Christopher M. Schumann.

*Approved sentence:* Bad-conduct discharge, confinement for 5 years, and reduction to E-1. Sentence adjudged 2 September 2017 by GCM convened at Keesler Air Force Base, Mississippi.

*For Appellant:* Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, MINK, and LEWIS, *Appellate Military Judges.*

Chief Judge MAYBERRY delivered the opinion of the court, in which Senior Judge MINK joined. Judge LEWIS filed a separate opinion dissenting in part and in the result.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

MAYBERRY, Chief Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one charge and specification of sexual abuse of a child

(requesting nude photos) and one charge and specification of indecent recording in violation of Articles 120(b) and 120(c), Uniform Code of Military Justice (UCMJ),[1] 10 U.S.C. §§ 920(b), 920(c).[2] The panel sentenced Appellant to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence but disapproved the adjudged forfeitures, deferred the mandatory forfeiture of pay in the amount of $728.00 until the date of action, and waived the mandatory forfeiture of pay and allowances for six months, release from confinement or expiration of term of service, whichever was sooner.

Appellant asserts eight assignments of error (AOEs):[3] (1) whether trial defense counsel was ineffective for failing to file a speedy trial motion pursuant to Rule for Courts-Martial (R.C.M.) 707; (2) whether the military judge erred in failing to perform an *in camera* review of mental health records pursuant to Mil. R. Evid. 513;[4] (3) whether the military judge erred in applying the good faith exception to the exclusionary rule after finding no probable cause for a search authorization; (4) whether the military judge erred in allowing expert witness testimony; (5) whether the military judge erred by admitting improper sentencing evidence; (6) whether the convening authority improperly denied Appellant's request to defer his reduction in rank; (7) whether the staff judge advocate recommendation (SJAR) and SJAR addendum failed to address Appellant's deferral request; and (8) whether Appellant's sentence was too severe.[5] Additionally, we address the post-trial processing delay. We find the military judge erred in applying the good faith exception to the exclusionary rule and set aside the findings and sentence.[6]

---

[1] Unless otherwise indicated, all references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial, and Mil. R. Evid. are to the versions found in the *Manual for Courts-Martial, United States* (2012 ed.).

[2] Appellant was found not guilty of one charge and one specification of knowingly enticing a minor to engage in sexually explicit conduct in violation of Article 134, UCMJ, 10 U.S.C. § 934.

[3] The assignments of error were reordered by the court.

[4] This issue was filed under seal and the discussion, *supra*, only reveals that which is necessary to resolve the issue.

[5] This issue was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[6] In light of our finding as to the admission of the evidence from Appellant's computer, we do not address AOEs (4) through (8).

## I. BACKGROUND

Appellant was convicted of sexually abusing his 12-year-old stepdaughter, ES, by requesting she send nude pictures of herself to him, and for using a camcorder, on divers occasions, to record ES's private area while she was in the bathroom.

Appellant was married and stationed at Keesler Air Force Base (AFB), Mississippi. He lived on base with his wife MB and her daughter ES, and their two biological children. MB attended classes at night. Appellant's brother, his brother's wife and their two children were staying at the house. As a result of the living arrangements, Appellant, MB, and their children used the bathroom in the master bedroom.

On the night of 20 April 2016, ES was in the family bathroom preparing to take a shower. After she had removed only her pants, she saw a camcorder on the bathroom floor with a red light on. She went over and picked the camcorder up, saw that there were two videos on it, only one of which she could view, and it showed her in the bathroom without her pants on. ES walked out of the bathroom, upset. Appellant told her a short time later that "he was trying to make it look like a trick and that he was just kidding." ES wanted to call her father, but Appellant took the phone from her. Approximately five minutes later, Appellant returned the phone to ES who called her father and left a voicemail.

ES's biological father JS and her stepmother LS were in the process of moving from Texas to Arkansas. JS testified at trial and described the evening of 20 April 2016. He was having dinner with his wife at a restaurant and saw that he had missed calls from ES and had a voicemail from her. He described the voicemail as ES "barely able to talk. It sounded like she was having a hard time breathing, just telling me to call her back as soon as I can." JS called his daughter back and she sounded scared, initially asking to come live with him. JS testified that ES then told him about finding the camcorder in the bathroom. JS informed his wife of the nature of the phone call and she called the Biloxi (Mississippi) police. Eventually, she also called the security forces at Keesler AFB.

ES was taken to the Air Force Office of Special Investigations (AFOSI) and interviewed in the early morning hours of 21 April 2016. In addition to describing the events of the previous night, ES indicated this was not the first time Appellant had a camcorder in the bathroom. She stated that a few weeks prior, Appellant came into the bathroom while she was in the shower and held the camera over the shower curtain. On that occasion Appellant told her it was not recording and it was just a joke. ES also told AFOSI that one night when Appellant was tucking her into bed, he talked about his upcoming deployment

and asked her to send him photos of her naked because he was going to miss her.

After ES's interview, AFOSI sought authorization to search. TSgt DD, an AFOSI agent at the time of the investigation but not at the time of trial, had listened when ES was being interviewed by other AFOSI agents and he had contacted the military magistrate seeking search authorization. The affidavit to support the search authorization stated "[b]ased on [TSgt DD's] experience, training and the facts listed above, I believe evidence proving [Appellant's] intent to manufacture child pornography is located within his residence" and requested "authorization to search and seize any and all cameras or electronic media to include hard drives, SD cards, compact discs, computers and tablet computers that could contain evidence of child pornography within" Appellant's house. During the search of Appellant's home, two camcorders, one external hard drive, seven hard drives, three digital cameras, one thumb drive, three laptop computers, one tablet, one SD card, two tower computers, and a bag with sixteen screws and a rechargeable battery were found and seized from the residence. No nude photos of ES were found on any of the devices. Video files were found in the temp folder on one of the tower computers, all depicting ES in various stages of undress in the bathroom. AFOSI sent six videos found on Appellant's computer to the Department of Defense Computers Forensics Laboratory (DCFL) for analysis.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Appellant asserts that his trial defense counsel, Maj ZW, failed to file a motion to dismiss the charges and specifications for a speedy trial violation under R.C.M. 707 and that this failure amounts to ineffective assistance of counsel. At the Government's request, the court ordered Maj ZW to submit a declaration addressing Appellant's claims. Maj ZW's declaration generally does not contradict Appellant's assertions of fact but rather explains the strategic and tactical decisions made before and during the trial by the Defense. We disagree that trial defense counsel provided ineffective assistance based on our assessment that the trial defense counsel made an objectively reasonable choice in strategy from the available alternatives.

#### 1. Additional Facts

Charges were preferred on 15 March 2017. During docketing discussions, trial defense counsel and the Government agreed to an exclusion of 56 days for R.C.M. 707 computation purposes. This 56 day period was from the Government's proposed ready date for trial, 3 July 2017, through 28 August 2017, the day Appellant was arraigned. On 16 June 2017, the military judge issued a

scheduling order for the parties, excluding 10 July 2017 through 20 August 2017 (34 days), from the speedy trial calculation.

Trial defense counsel recognized the military judge's omissions from the confirmation memorandum and "believed the [military judge] mistakenly entered the dates on the confirmation memo and failed to exclude Defense delay, depriving the Government of an additional 15 days [he] [had] previously agreed" should have been excluded. Based on this mistake, trial defense counsel believed the "true speedy trial date" to be 7 September 2017. Further, trial defense counsel believed an additional 30 days of time would have been found to be excludable due to his lack of immediate availability for the Article 32, UCMJ, preliminary hearing.

Trial defense counsel considered a speedy trial motion under R.C.M. 707, but did not file one for two reasons. First, he believed that he could not credibly oppose a Government request to exclude additional time when he had previously "agreed in the docketing memo the Government should receive 56 days of excludable delay" and that "there was likely an additional 30 days of excludable delay" due to his unavailability for the preliminary hearing.

Second, trial defense counsel also had a strategic reason not to do so. Based on information from trial counsel, Appellant's ex-wife, and a subsequent Government motion to permit remote live testimony that was filed two days before trial, it became apparent to Appellant and trial defense counsel that the victim, ES, may refuse to appear at trial and testify. As a result, Appellant decided that it was in his best interest to continue to trial in the hopes that a submitted request to be discharged in lieu of trial would be approved "while ES was wavering."

Based on these circumstances, trial defense counsel believed that Appellant's "only tactical advantage was the combination of [a] motion to suppress potentially succeeding and ES's wavering participation." As a result, the Defense "decided our best strategy was to pursue that tactical advantage and see if it could result in an even better bargaining position for a PTA or Chapter 4 request." In his declaration, trial defense counsel ultimately summarized why a motion under R.C.M. 707 was not filed:

> Filing a motion to dismiss under R.C.M. 707 would have given up this tactical advantage for no clear benefit. Even if the R.C.M. 707 motion to dismiss was successful, the military judge would have dismissed the case without prejudice. This would have given the Government time to reprefer and convince ES to testify in the second court-martial. Further, the Government would have had more time to resubmit [Appellant's] electronics for additional forensic analysis, something the [Senior Trial Counsel]

5

threatened but the legal office ultimately declined to pursue because their SJA was pushing to finish the case quickly. However, with the benefit of additional time, a motivated legal office may have been willing to search for new evidence and bring additional charges. I would not have wanted to expose [Appellant] to that risk. In short, I would not have filed the R.C.M. 707 motion and ceded the only tactical advantage the Defense was likely to have to give the Government further time to convince ES to testify and perfect its case against [Appellant].

### 2. Law

We review claims of ineffective assistance of counsel de novo. *United States v. Gutierrez*, 66 M.J. 329, 330–31 (C.A.A.F. 2008). Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Appellant has the burden of demonstrating: (1) a deficiency in counsel's performance that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment"; and (2) that the deficient performance prejudiced the defense through errors "so serious as to deprive the defendant of a fair trial." Appellant has the burden to demonstrate both deficient performance and prejudice.

Reviewing courts "do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)). For this reason, counsel receives "wide latitude . . . in making tactical decisions." *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (quoting *Strickland*, 466 U.S. at 689). In making this determination, courts must be "highly deferential" to trial defense counsel and make "every effort. . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

An accused must be brought to trial within 120 days after preferral of charges. R.C.M. 707(a). The "date of preferral of charges" shall not count, but the date on which the accused is arraigned under R.C.M. 904 shall count. R.C.M. 707(b). Pretrial delays approved by a military judge or convening authority are excluded from the 120 day limit and may be based on "time requested by the defense . . . or additional time for other good cause." R.C.M. 707(c)(1) and its Discussion. "[A]ny interval of time between events is a 'delay' and, if approved by the appropriate authority, is excluded from the government's accountable time under R.C.M. 707(a)." *United States v. Nichols*, 42 M.J. 715, 721 (A.F. Ct. Crim. App. 1995).

The appropriate remedy for a violation of R.C.M. 707 is dismissal with or without prejudice. R.C.M. 707(d)(1). Dismissal with prejudice is determined after considering the following factors: (1) the seriousness of the offense; (2) the facts and circumstances of the case that lead to dismissal; (3) the impact of a re-prosecution on the administration of justice; and (4) any prejudice to the accused resulting from the denial of a speedy trial. *Id.* Dismissal with prejudice is generally only appropriate for a constitutional violation of an accused's right to speedy trial. *Manual for Courts-Martial, United States* (2016 ed.), App. 21, at A21–41.

### 3. Analysis

Trial defense counsel provided a reasonable explanation for why a motion to dismiss the charges for speedy trial was not raised. First, he believed he had agreed to excludable delay that led him to believe the "true" speedy trial date was 7 September 2017, 10 days after Appellant was arraigned. Second and perhaps most importantly, trial defense counsel believed that ES was reluctant to testify and knew that the most likely outcome of a successful motion would have been dismissal of the charges without prejudice. Counsel, with Appellant's concurrence, made the tactical decision to press to trial rather than allow the Government more time to find more evidence and or convince ES to testify.

Appellant relies solely on the prospect that a successful R.C.M. 707 motion would result in dismissal and therefore concludes the outcome would have been significantly different. However, Appellant provided no evidence of any constitutional violation of his right to speedy trial that would support dismissal with prejudice. Only under those circumstances would Appellant's conclusion be persuasive.

Appellant has not met his burden to show his counsel's tactical actions were unreasonable, or that trial defense counsel's level of advocacy fell measurably below the performance expected. Even assuming *arguendo* we found trial defense counsel's decision not to file an R.C.M. 707 speedy trial motion was not tactically reasonable, under the facts of this case, dismissal with prejudice was not a reasonable possibility. Therefore Appellant has also failed to show a "reasonable probability that absent the error, there would have been a different result." *Gooch*, 69 M.J. at 323. Appellant's trial defense counsel effectively represented Appellant throughout the trial and post-trial and therefore no relief is warranted.

## B. Failure to Conduct *In Camera* Review of Mental Health Records

Appellant asserts the military judge erred in denying the request to perform an *in camera* review of ES's mental health records which were not in the possession of the Government or definitively determined to exist. We disagree.

**1. Additional Facts**

Two days prior to trial, the Government filed a motion requesting ES testify remotely and the Defense objected. One basis for the request was a statement by LS, ES's stepmother, that ES was so fearful of Appellant she would likely be unable to testify in his presence. At the motions hearing on the first day of trial, the Government called Dr. BE, a forensic psychologist, in support of their request for remote live testimony. Dr. BE stated that he met with ES and her parents the day before, and conducted an interview with ES alone that lasted approximately 40 minutes. Dr. BE also met with LS, JS, and MB, ES's biological mother, individually. Dr. BE testified that "one of ES's parents told him that ES had been told for months she would not have to testify at trial." Dr. BE further stated that ES thought she could testify in front of a small group if she were outside the courtroom but preferred not to testify at all. Based on these meetings, Dr. BE testified that it was his expert opinion that if ES were "required to appear in open court and testify in front of [Appellant] that it would cause severe psychological harm or severe psychological trauma." Dr. BE was aware that ES had received counseling but did not rely on that in forming his opinion.

After receiving the Government's motion, the Defense interviewed ES's mother, father, and stepmother the day before trial and learned that ES had received counseling from a civilian provider shortly after the allegations giving rise to the charges and specifications. The counseling "lasted approximately seven weeks, no diagnosis was made, and the counseling ended because ES did not require further treatment." As a result of this interview, the Defense made a verbal request on the record that the military judge compel records pertaining to ES's counseling, contending the information was necessary to be able to effectively cross-examine Dr. BE, and possibly ES, looking for any evidence of "documentary evidence regarding trauma," and possibly to rebut sentencing evidence. The Defense did not call any witness or offer any documentary evidence in support of their motion. The Defense interpreted the exception contained in Mil. R. Evid. 513(d)(2) as removing the privilege whenever the communication is evidence of child abuse or neglect when one spouse is charged with a crime against the child of either spouse.

The military judge denied the motion to compel ES's records, even for an *in camera* review, stating he did not interpret Mil. R. Evid. 513(d)(2) the same way the Defense did and they had not met their burden that the communications would reveal admissible evidence but granted the Government's motion to allow ES to testify remotely unless Appellant elected to absent himself from the courtroom. As a result of the ruling allowing remote testimony, the Defense asked the military judge to reconsider his ruling denying an *in camera* review of ES's counseling records, specifically asking for any discussion of testifying.

The Defense asserted that in a case where (1) the patient is a victim of an alleged offense by their parent or spouse of a parent, (2) there is a request for remote testimony, and (3) the defense satisfies their burden to establish that the counseling records would provide admissible evidence to cross-examine either the victim or the expert who is offering an opinion that non-remote testimony would cause trauma, no privilege applies and the records should be released. The trial defense counsel further argued "we are not going to know what she said to the counselor unless we see the records, and we'll never see the records unless we exactly know what she said to the counselor" and therefore there was only a requirement to establish a "reasonable likelihood" to satisfy the standard for an *in camera* review—"because you never know what you don't know." The military judge denied the reconsideration as to the remote testimony ruling, but left open the Mil. R. Evid. 513 motion regarding cross-examination of ES and sentence rebuttal until they were ripe.[7]

Later that same day, the military judge indicated that he continued to assess the Mil. R. Evid. 513 issue and had advised the Government to make efforts to see if records exist. He also alerted the parties that he had preliminarily reviewed, but not yet fully analyzed *LK v. Acosta*, 76 M.J. 611 (A. Ct. Crim. App. 2017), and found one bit of language he thought was instructive, which stated that the purpose of Mil. R. Evid. 513(d)(2) is not to turn over every alleged child victim's mental health records to an alleged abuser. The following afternoon, the military judge provided a "follow up ruling" on the Mil. R. Evid. 513 issue which included:

> In analyzing the issue, the court first looks to see whether or not there is an exception to MRE 513 that would be applicable in the case based on the defense's proffer. Assuming an exception may apply, the court would then need to examine the records *in camera* to determine if, in fact, production is warranted, but only if the defense is able to show by a preponderance of the evidence that "a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege."
>
> . . . .
>
> First, I'll just note the only evidence that [ES], in fact, even sought counseling after the alleged offense comes in the form of, essentially, proffers from counsel, as well as a reference during Doctor [BE]'s testimony concerning a comment made by a family

---

[7] Ultimately, Appellant chose to voluntarily absent himself from the courtroom during ES's testimony.

member. This, in and of itself, doesn't amount to a likelihood that any such records would yield evidence admissible under an exception to the privilege. Before an *in camera* review can be even conducted that standard has to be met.

Second, assuming the defense were able to show a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege, the court may examine those records to determine if, in fact, and [sic] exception even applies that would warrant production. The defense has indicated that the records are being requested to rebut the testimony of Doctor [BE] on whether [ES] is, in fact, fearful of the accused, but even if such evidence existed, it's arguable to as even whether or not that type of evidence would amount to evidence of "child abuse or neglect" as required by the exception vice evidence of fear or lack of fear of an absence of the accused.

But in any event, the second portion of the exception states "or in a proceeding in which one spouse is charged with a crime against a child of either spouse." A plain reading of this language suggests that in any court proceeding where an accused is charged with a crime against his child, that child's mental health records would not be protected by the privilege under MRE 513. It's this court's belief that such an interpretation would produce an essentially absurd result. It would gut the privilege under MRE 513 protecting mental health records of an alleged child victim who is the victim of an alleged accused who happens to be a parent, thereby exposing that alleged victim's mental health record to her alleged parent abuser.

This court adopts the interpretation of the Army Court of Criminal Appeals in a case *L.K. v. Acosta*, 76 M.J. 611 . . . . "We interpret any proceeding to mean in the proceeding in question. MRE 1101(a) lists the proceedings applicable to the rules of evidence, that is, it is an exception to the evidentiary privilege, not an exception to the disclosure of privileged information. It is an exception that prevents the assertion of the privilege at trial regarding the admission of evidence. It is not an exception that allows the disclosure of privileged information." And the court goes on to state, "In cases of child witnesses, it is the parent or guardian who generally may assert a privilege on behalf of the child. The exception in question thus operates to prevent one spouse from asserting the psychotherapist privilege to prevent the admission

of statements of child abuse against themselves or their spouse." This interpretation is consistent with the drafter's intent. The purpose of the exceptions to MRE 513 were to ensure the psychotherapist communications could be transmitted to military commanders without fear of violating the privilege contained in the rule, that is a military psychiatrist can inform a military commander of allegations of child abuse without violating the privilege. And this is the Army court's language, but the purpose of the exception was not to turn over every alleged child victim's mental records to the alleged abuser,

Therefore, this court finds that the defense has failed to articulate a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege justifying *in camera* review to determine whether production is even appropriate or that the exception would apply based on the basis for their request.

The court's previous ruling stands. The defense request for the production of mental health records of [ES] is denied.

**2. Law**

We review a military judge's rulings under Mil. R. Evid. 513 for abuse of discretion. *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018).

"Construction of a military rule of evidence, as well as the interpretation of statutes, the UCMJ, and the [Rules for Courts-Martial], are questions of law reviewed de novo." *LRM v. Kastenberg*, 72 M.J. 364, 369 (C.A.A.F. 2013) (citations omitted). Interpretation of a rule begins with the rule's plain language. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007). The plain language of the rule controls unless use of the plain language would yield an absurd result. *Id.* The fact a party deems a result undesired does not render the result absurd. A result is not absurd merely because it is uncommon, unanticipated, or represents an imperfect realization of the drafter's intent. *See United States v. Fontaine*, 697 F.3d 221, 228 (3d Cir. 2012).

Mil. R. Evid. 513(a) addresses the psychotherapist privilege and states:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the Uniform Code of Military Justice, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

The privilege has a number of exceptions found in subsection (d):

> (2) when the communication is evidence of child abuse or of neglect, or in a proceeding in which one spouse is charged with a crime against a child of either spouse;
>
> . . .
>
> (6) when necessary to ensure the safety and security of military personnel, military dependents, military property, classified information, or accomplishment of a military mission.

Whether an exception applies is a fact-specific determination for a military judge to consider. *See United States v. Jenkins*, 63 M.J. 426, 430 (C.A.A.F. 2008). A military judge must conduct a hearing to determine if the privilege exists. Mil. R. Evid. 513(e)(2). A military judge "may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." Mil. R. Evid. 513(e)(3). Before a military judge may do an *in camera* review, the judge must find by a preponderance of evidence that the moving party showed:

> (A) a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege;
>
> (B) that the requested information meets one of the enumerated exceptions under subsection (d) of this rule;
>
> (C) that the information sought is not merely cumulative of other information available; and
>
> (D) that the party made reasonable efforts to obtain the same or substantially similar information through non-privileged sources.

Mil. R. Evid. 513(e)(3).

In *United States v. Morales*, No. ACM 39018, 2017 CCA LEXIS 612 (A.F. Ct. Crim. App. 13 Sep. 2017) (unpub. op.), we held the military judge did not abuse his discretion in denying a motion to compel mental health records when trial defense counsel frankly conceded he had "no way of knowing" and could "merely speculate" as to the contents of the records. *Morales*, unpub. op. at *27.

The Army Court of Criminal Appeals (ACCA) held the second clause of Mil. R. Evid. 513(d)(2) is independent of the first, as the two are separated by a comma and the disjunctive "or." *Acosta*, 76 M.J. at 617. The words "in a proceeding" indicate the second clause only applies to the admissibility of evidence, not the production or disclosure of evidence. *Id.* at 618–19. By contrast,

the first clause applies to production, disclosure, and admissibility of otherwise privileged communications.

In *AJ v. Cook*, ARMY MISC 20180441, 2018 CCA LEXIS 611 (A. Ct. Crim. App. 7 Dec. 2018) (unpub. op.), trial counsel breached the victim's privacy by obtaining her mental health records. The case involved the admissibility of evidence, not the disclosure of evidence because the trial counsel sought out and procured petitioner's mental health records on his own initiative, and thereby rendered any questions about whether those records could have been compelled moot. *Id*. at *8. The court held the military judge did not abuse his discretion in admitting the records because the second clause of Mil. R. Evid. 513(d)(2) states the psychotherapist-patient privilege does not apply "in a proceeding in which one spouse is charged with a crime against a child of either spouse."

The right to confront witnesses does not include the right to *discover* information to use in confrontation. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) ("If we were to accept this broad interpretation . . . the effect would be to transform the Confrontation Clause into a constitutionally-compelled rule of pretrial discovery. Nothing in the case law supports such a view.").

### 3. Analysis

There "is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rather, constitutional "discovery" is usually delineated by the contours of the seminal case of *Brady v. Maryland*, 371 U.S. 812 (1962). As the mental health records in question here were not in the possession of the prosecution, they do not fall under the ambit of *Brady*. With no other constitutional right to disclosure at play, the disclosure of the mental health records in this case is not "constitutionally required."

Here, Appellant sought information to challenge the evidence used to justify remote live testimony, to include cross-examination of Dr. BE and ES if she testified, and asked the military judge to do an *in camera* review of the records. The military judge did not perform the *in camera* review. Our review of the evidence supports the military judge's determination that Appellant did not show there was a reasonable likelihood that the records would yield admissible evidence under an exception to the Mil. R. Evid. 513 privilege or that the requested information met one of the enumerated exceptions in Mil. R. Evid. 513(d).

First and foremost, we hold the military judge did not abuse his discretion in finding Appellant offered no evidence regarding the contents of the records he sought, nullifying any reasonable likelihood they would reveal admissible evidence. Appellant instead relies on the position that the likelihood need only

be "reasonable" due to the difficulties in articulating the content of records without knowing the content. Although our analysis could end here, we address the second prong of the test for *in camera* review as it applies to mental health records since this issue is one we see on a regular basis.

We disagree with Appellant's interpretation of Mil. R. Evid. 513(d)(2) that mental health records lose their privileged status when the accused is charged with an offense under the UCMJ involving a child victim who is their own child or the child of their spouse. Applying the standard set out by the CAAF in *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) regarding the principles of statutory construction as applied to rules of evidence, we agree with the analysis of our sister service court in *Acosta;* Mil. R. Evid. 513 (d)(2) has two distinct clauses. The first exception would apply if the privileged communications were evidence of child abuse or neglect and allows disclosure to commanders. Here, Appellant was seeking communications involving testifying in general, not statements regarding the offenses themselves. As such, the clause one exception does not apply in Appellant's case.

While Appellant asserts that the second clause "removes" the privilege whenever the victim is the child of the accused or his spouse and therefore allows disclosure of the privileged information, we do not agree with this broad interpretation. As the ACCA stated in *Acosta,* the second clause of Mil. R. Evid. 513(d)(2) only pertains to the *admission* of evidence, not the *disclosure* of evidence, and does not apply in this case. Assuming *arguendo* the evidence sought was admissible, this exception would prevent ES's parent or guardian from asserting the privilege to prevent the admission of ES's statements.

In asserting prejudice, Appellant again combines the impact of the military judge's decision to allow remote testimony and the failure to compel disclosure of ES's mental health records.[8] Appellant ultimately chose to voluntarily absent himself from the courtroom during ES's testimony, so the remote live testimony became a non-issue. Similarly, we are not persuaded the mental health records would have been effective in rebutting ES's unsworn statement in pre-sentencing that "sixteen months ago her life changed forever," as that statement was based not only on the offenses committed that night, but on the overall upheaval of her life as she knew it—moving away from her young siblings, taking their father away from them, and leaving her friends to name a

---

[8] We do not address Appellant's allegation that the instruction given led the members to believe that Appellant's physical presence would be damaging to ES, which in turn suggested she would only be so harmed if Appellant was guilty. This instruction was given at the request of the Defense and as such, the issue was waived. *See United States v. Harcrow*, 66 M.J. 154, 157 (C.A.A.F. 2008).

few. The failure to disclose ES's mental health records did not prejudice Appellant.

## C. Applicability of the Good Faith Exception to the Exclusionary Rule

Appellant alleges that the military judge erred in finding the good faith exception to the exclusionary rule applied after determining the military magistrate did not have a sufficient basis to find probable cause. We agree. We find the evidence provided to the military magistrate was facially deficient, in that it failed to establish a nexus between Appellant's use of a camcorder and downloading files to a computer. We set aside the finding of guilty as to the indecent recording offense and authorize a rehearing.

### 1. Additional Facts

On 14 August 2017, the Defense submitted a motion to suppress the evidence obtained during the search of Appellant's home. Both AFOSI Special Agent (SA) MD and TSgt DD testified, as did the magistrate. ES did not testify at the motions hearing.

SA MD was the AFOSI case agent for Appellant's investigation. SA MD did not conduct the interview of ES, but listened to the majority of that interview.[9] SA MD's testimony at the suppression hearing provided a description of the allegations made. ES had found a small handheld camcorder in the bathroom, on the floor covered by clothing to conceal its location. ES retrieved the camcorder, saw it was recording and said there was an 11 minute video of herself in the bathroom. She also indicated that approximately a month earlier, Appellant had come in the bathroom while she was showering and placed a camcorder over the shower curtain, she saw it, and Appellant later told her it was not recording. Finally, SA MD testified that ES told AFOSI that Appellant had requested she send nude photographs of herself to him. SA MD did not recall that ES said she was nude in the video. SA MD also testified that he had attended an Internet Crimes Against Children course and was taught some of the characteristics of people that manufacture and collect child pornography, to include that they do not typically delete files of child pornography, but rather organize and maintain them, which was one of the reasons AFOSI wanted to request search authorization for additional media. SA MD was in the room when TSgt DD called the magistrate.

TSgt DD's testimony at the motions hearing essentially mirrored that of SA MD with regard to the allegations made by ES. He confirmed that there was no evidence that ES was captured nude on the recording that night.

---

[9] Although the interview was recorded, there is no audio as the equipment was not functioning properly.

TSgt DD testified as to the normal process to obtain search authorization—call the on-call JAG, patch through with the military magistrate, explain the facts and circumstances of the case, and the magistrate gives search authorization, typically. TSgt DD testified that he called the military magistrate, Colonel (Col) SA, and briefed her on the reasons why a search should be authorized. TSgt DD did not have the camcorder at the time of this request, but testified that the search authorization request included additional media because "typically with devices such as that people don't use them to watch what they recorded, for purposes of maybe reviewing to make sure they captured the actual image. Typically, in [his] own personal experience with a camera like that, it would be uploaded to a computer." TSgt DD testified that he believed all the information he verbally shared with Col SA was included in a written affidavit that he provided a few days later to Col SA.

TSgt DD did not brief Col SA regarding any technical specifications of the video camcorder ES described, to include the memory capacity of the camcorder or whether there were any files on the camcorder, or whether files on the camcorder were transferable to a computer or that Appellant had actually connected that camcorder to a computer. TSgt DD did not brief Col SA as to whether any child pornography was known to be on Appellant's computer, or whether he had visited any child pornography websites. Finally, TSgt DD did not recall mentioning to Col SA his belief that traditionally individuals do not watch videos on camcorders, or that files on camcorders can be transferred to computers.

Col SA also testified at the suppression hearing. Col SA agreed that the affidavit contained all the information that TSgt DD verbally briefed her on. Col SA further testified she authorized the broad scope of electronic devices due to her understanding Appellant had asked for photos in the past and held a camcorder over the shower curtain. Col SA also believed that it seemed reasonable that someone would back up their data. However, Col SA acknowledged she did not have any specific technical communications training with regard to the backing up or transferring of files.

The military judge denied the motion, finding that while the magistrate did not have a substantial basis for finding probable cause, all of the elements of the good faith exception to the exclusionary rule were met. The military judge made findings of fact which *inter alia*, included:

> TSgt [DD] testified that he requested authority to seize additional digital media devices because in his experience camcorders were not typically used to watch videos, and therefore he believed the accused may have transferred videos onto other media devices. He did not specifically relay this belief to the magistrate.

The search authorization ([Air Force Form] 1176) and affidavit are before the court as attachments to Appellate Exhibit IX. In the affidavit, TSgt [DD] requests authority to seize "any cameras or electronic media to include hard drives, SD cards, compact discs, computer and tablet computers that could contain evidence of child pornography.". . . The affidavit did not directly tie the camcorder to any other digital media belonging to [Appellant], nor was there evidence presented to the magistrate to suggest [Appellant] was involved in the viewing or transmitting of child pornography beyond the allegation that he may have videotaped his 12 year old step daughter while she was naked in the bathroom. . . . Tech Sergeant [DD] stated that he had no specialized training in matters relating to child crimes investigations beyond the initial training he received at the Federal Law Enforcement Training Center (FLETC).

. . . Col [SA] stated that she could not remember verbatim the discussion she had with TSgt [DD] at the time she granted the search authorization due to the time that had passed, but she did have an opportunity to review the search authorization and affidavit prior to providing her testimony. She testified that while she could not recall the verbal discussion verbatim, the written authorization was consistent with her recollection of the discussion. She recalled having a conversation with OSI and JA and that she was informed that [ES] had alleged that she found a camera recording her while she was in the bathroom for a shower that was placed there by [Appellant], that in a previous incident [Appellant] held the camera over the shower curtain while [ES] was in the shower, and that in the past [Appellant] had requested nude photos of [ES]. Specifically, Col [SA] testified that when discussing the scope of the search authorization, she agreed to include other digital media including computers based on the fact that there were multiple instances involving a camcorder and because [Appellant] had asked for naked pictures of [ES]. It was Col [SA]'s impression that this behavior spanned a period of time, and given the fact that there was more than one instance involving the camcorder, she believed [Appellant] had likely backed up the video from the camera onto other devices. Col [SA] testified that backing up such material seemed reasonable to her, and that these factors were all taken into consideration by her when she was considering whether to grant the search authorization. . . . In response to questions posed by the Court, Col [SA] stated that she did not recall talking about the

specific nature of camcorders with the OSI agent, but based on her own personal knowledge of camcorders, she would expect that individuals would back them up to other media devices.

In his conclusions of law, the military judge found that

(1) the facts in Appellant's case were "very similar" to those in *United States v. Nieto,* 76 M.J. 101 (C.A.A.F. 2017) due to the lack of a "particularized nexus between the camcorder and the accused's laptop or other electronic media devices";

(2) the affidavit in Appellant's case "provided even less of a generalized profile than the agent in the *Nieto* case";

(3) "the military magistrate had no substantial basis for finding probable cause even after according the military magistrate great deference"; and

(4) "the inevitable discovery doctrine does not apply in this case."

However, the military judge found that "all of the elements of the good faith exception have been satisfied"[10] and concluded his ruling as follows:

Finally, the court notes that this was a very close call, and recognizes that the court's ruling may appear inconsistent with the holding of the CAAF in *Nieto*. However, given the Supreme Court's favorable approach to the deference provided to magistrates and the warrant process, and the fact that this court has found no bad faith or illegality on the part or actions of the participants involved in the search authorization process that would justify the deterrent remedy of exclusion, the good faith exception to the exclusionary rule justifies greater consideration and analysis.

**2. Law**

Appellate courts "review a military judge's [denial of] a motion to suppress . . . for an abuse of discretion." *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016). When reviewing a military magistrate's issuance of a search authorization, we do not review the probable cause determination de novo. *Id.* at 125. An abuse of discretion occurs when the military judge's findings of fact are clearly erroneous or he misapprehends the law. *See United States v. Clay-*

---

[10] The military judge noted that the *Nieto* decision was only published approximately two months prior to the execution of this search.

*ton*, 68 M.J. 419, 423 (C.A.A.F. 2010) (citations omitted). In doing so, we examine whether a military magistrate had a substantial basis for concluding that probable cause existed. *Nieto*, 76 M.J. at 105 (quoting *United States v. Rogers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009)). A substantial basis exists when, under the totality of the circumstances, "there is a fair probability that evidence of a crime will be found at the identified location." *Rogers*, 67 M.J. at 165 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)). Great deference is given to the magistrate's probable cause determination due to the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Gates*, 462 U.S. at 236. However, as the Supreme Court held in *United States v. Leon*, 468 U.S. 897, 914 (1984), the deference is "not boundless." If the military magistrate did not have a substantial basis for concluding that probable cause existed, "the Government has the burden of establishing both [the good faith and inevitable discovery] doctrines by a preponderance of the evidence." *Nieto*, 76 M.J. at 108.

The Fourth Amendment[11] protects individuals from unreasonable governmental intrusion into an individual's reasonable expectation of privacy. The Fourth Amendment protection against unreasonable searches and seizures applies to military members. *United States v. Ezell*, 6 M.J. 307 (C.M.A. 1979). The Supreme Court in *Riley v. California* reiterated that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" 573 U.S. 373, 381 (2014). The question of whether an expectation of privacy exists is resolved by examining whether there is a subjective expectation of privacy that is objectively reasonable. *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014). Searches "conducted pursuant to a warrant [are] presumptively reasonable whereas warrantless searches are presumptively unreasonable unless they fall within 'a few specifically established and well-delineated exceptions.'" *Id.* at 99.

Mil. R. Evid. 315(f) provides that "[a] search authorization issued under this rule must be based upon probable cause," which "exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." Mil. R. Evid. 315(e)(2) provides, "[t]he execution of a search warrant affects admissibility only insofar as exclusion of evidence is required by the Constitution of the United States or any applicable Act of Congress."

"[T]he good-faith doctrine applies if: (1) the seizure resulted from a search and seizure authorization issued, in relevant part, by a military magistrate; (2) the military magistrate had a substantial basis for determining probable

---

[11] U.S. CONST. amend. IV.

cause existed; and (3) law enforcement reasonably and in good faith relied on the authorization." *Nieto*, 76 M.J. at 107 (citations omitted).

In *Leon*, the Supreme Court listed four circumstances where the "good faith" exception would not apply: (1) where the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false"; (2) where the magistrate "wholly abandoned his judicial role"; (3) where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is so "facially deficient . . . in failing to particularize the place to be searched or the things to be seized . . . that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

In the military, the good faith exception is enumerated in Mil. R. Evid. 311(c)(3), which provides:

> Evidence that was obtained as a result of an unlawful search or seizure may be used if:
>
> > (A) The search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;
> >
> > (B) The individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and
> >
> > (C) The officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith shall be determined on an objective standard.

The United States Court of Appeals for the Armed Forces (CAAF) recently analyzed their decisions concerning the applicability of the good faith exception and acknowledged "tension between [its] discussion of the good-faith doctrine" in its case law interpreting Mil. R. Evid. 311(c). *Nieto*, 76 M.J. at 108 n.6 (citing *Hoffmann*, 75 M.J. at 127–28; *United States v. Carter*, 54 M.J. 414, 419–22 (N.M. Ct. Crim. App. 2018)). Our sister court sought to harmonize the holdings in *Hoffmann* and *Carter* as follows:

> In *Hoffmann*, the CAAF applied the plain language of Mil. R. Evid. 311(c)(3) to determine if otherwise excludable evidence qualified for the good faith exception. . . . Applying the plain language of the rule to this case as the CAAF did in *Hoffman* [sic] is straightforward. Subsection (B) of the rule requires the person

20

who authorized the search to have had a substantial basis for finding probable cause.

. . . .

*Carter* purports to apply the Supreme Court's seminal good faith case, *United States v. Leon*, to courts-martial.

. . . .

. . . *Leon* listed four circumstances in which the good faith exception was not available to the government . . . .

. . . [T]he CAAF attempted to reconcile Mil. R. Evid. 311(c)(3)'s three-pronged good faith test with *Leon*. But this is not easily done. In order for a search to qualify for the good faith exception under the plain language of the rule's second prong, the person issuing the authorization must have had a substantial basis for finding probable cause. This is inconsistent with *Leon*, which held that a search might qualify for the good faith exception even if the magistrate did not have a substantial basis for his determination, so long as the police executing the warrant themselves acted in good faith.

The difference could not be elegantly harmonized. To make it work, the *Carter* court recast the rule's second prong. Where the rule asks whether the *person issuing the authorization* had a substantial basis for finding probable cause, *Carter* changes the question to ask whether *the police executing the search* reasonably believed that the magistrate had a substantial basis for finding probable cause.

*United States v. Perkins*, 78 M.J. 550, 559–60 (N.M. Ct. Crim. App. 2018).

In *Perkins*, the Navy-Marine Corps Court of Criminal Appeals (NMCCA) found the different standards resulted in different results as to the existence of a substantial basis to find probable cause. NMCCA assessed that *Carter* was inconsistent with the plain language of Mil. R. Evid. 311(c), yet *Hoffmann*'s plain-language approach was inconsistent with *Carter*. Additionally, *Hoffmann* was the more recent decision, yet the CAAF had favorably cited *Carter* and not *Hoffmann* in *United States v. Darnall*, 76 M.J. 326, 332 (C.A.A.F. 2017). The NMCCA determined that *Carter* was binding precedent and ultimately ruled that although the military judge erred in determining the magistrate had a substantial basis for his probable cause determination, the agent executing the search reasonably and with good faith relied on the issuance of the authorization. *Perkins*, 78 M.J. at 561.

In light of the "tension" between *Carter* and *Hoffmann*, and the CAAF's recognition without resolution of said "tension" in *Nieto,* the NMCCA "respectfully suggest[ed] that the CAAF resolve the tension between *Carter* and *Hoffmann* in favor of *Hoffmann* and the plain language of Mil. R. Evid. 311(c)(3)." *Id.* at 565. The Navy Judge Advocate General certified the case and the CAAF issued its opinion approximately three months ago. *United States v. Perkins (Perkins II)*, 78 M.J. 381 (C.A.A.F. 2019).

The CAAF concluded that the NMCCA properly followed the *Carter* decision, and affirmed the NMCCA decision that the military judge did not abuse his discretion in denying the motion to suppress evidence obtained from the search of Perkins' home. *Id.* at 383.

Explaining the decision in *Hoffmann*, the CAAF stated "[t]he opinion did not address the possibility, recognized in *Carter*, that the good faith exception could be satisfied if the agents executing the search had an objectively reasonable belief that the magistrate had a substantial basis for determining the existence of probable cause, even if the magistrate did not have such a basis." Furthermore, the opinion states:

> The most sensible understanding of *Hoffmann* is that the Court simply did not consider the reasonable beliefs of the agents executing the search. In their briefs in *Hoffmann*, the parties neither cited *Carter* nor addressed the law enforcement agents' beliefs. The Court's opinion in *Hoffmann* likewise did not cite *Carter* or consider *Carter*'s interpretation of M.R.E. 311(c)(3)(B). The *Hoffmann* opinion also did not recognize or address the interpretive problem, explained above, that reading M.R.E. 311(c)(3)(B) literally would render the provision a nullity and eliminate the good faith exception as a practical matter.

> To be sure, when precedents conflict, we typically follow the more recent decision. *See United States v. Hardy*, 77 M.J. 438, 441 n.5 (C.A.A.F. 2018). But in this case, we see strong reasons to adhere to *Carter*. *Carter* contains a thorough consideration of a complicated issue, giving effect to all parts of [Mil. R. Evid.] 311. *Hoffmann* does not. In addition, *Carter* is a longstanding precedent, while *Hoffmann* is not. We have recognized that "[w]e will not overturn 'precedent . . . [that] has been treated as authoritative for a long time . . . unless the most cogent reasons and inescapable logic require it.'" *United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018) (alterations in original) (citation omitted). Accordingly, we disapprove the decision in *Hoffmann* to the extent that it differs from *Carter*.

*Perkins II*, 78 M.J. at *388 (alterations in original).

### 3. Analysis

Unlike the prediction made in Judge Ohlson's dissent in *Perkins II*, this court does not conclude that a commander's probable cause determination—no matter how meritless—is, for all intents and purposes, immune from appellate review. *See Perkins II,* 78 M.J. at *395. We agree with the military judge's finding that there was no substantial basis to establish probable cause. We understand that the military judge struggled with the analysis of the good faith exception after *Nieto*, and acknowledged it was a "very close call." We do not agree with the military judge's finding that all of the elements of the good faith exception to the exclusionary rule were met. Consequently, we find the military judge abused his discretion in denying the motion to suppress.

The military judge appropriately determined that TSgt DD provided sufficient detail regarding ES's allegation to support the search and seizure of the camcorder. However, as was the case in *Nieto*, TSgt DD did not provide a particularized nexus between his request to seize and search more than just the device used to record, in this case the camcorder, and a computer or other electronic device. The failure to provide the necessary nexus was not inadvertent considering the fact that TSgt DD had no knowledge of whether Appellant owned any computers or other electronic devices.

Having determined there was no substantial basis for probable cause, we must address whether there was any exception to the exclusionary rule which would support the decision not to suppress the evidence found on Appellant's computer. Again, we agree with the military judge's determination that the inevitable discovery exception did not apply in this case. There was no evidence that the AFOSI agents possessed or were actively pursuing evidence or leads that would have inevitably led to the discovery of the computer. In addition to the basic fact that AFOSI had no knowledge of whether Appellant owned a computer, they had no evidence that if he did, Appellant routinely connected the camcorder to the computer or could have linked the camcorder or any SD card found in the camcorder to Appellant's computer.

We find the facts of this case do not establish all of the elements of the good faith exception to the exclusionary rule. Starting with Mil. R. Evid. 311, we agree that the magistrate had the authority to issue the search authorization. Having already determined the magistrate had no substantial basis for probable cause, we are left with the third element contained within Mil. R. Evid. 311, whether "the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization" or the restatement of this element adopted initially in *Carter* and reaffirmed in *Perkins II*, whether the "magistrate authorizing the search had a substantial

basis, in 'the eyes of a reasonable law enforcement official executing the search authorization.'" We find the evidence does not establish this element.

The military judge found that TSgt DD did not recklessly omit or misstate any information. We disagree because the search authorization in this case was based on an assertion that under the facts and circumstances it was reasonable to believe evidence of child pornography would be found in Appellant's home. None of the information available to the AFOSI agents supported a conclusion that the images captured on the camcorder depicted ES naked. The record also establishes that the AFOSI agents asked ES whether she ever sent any naked photos of herself to Appellant and she responded she did not. The record is clear that at trial, ES testified that she never sent any nude photos and no nude photos were found. Article 134 of the UCMJ defines child pornography as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." Article 134, UCMJ, 10 U.S.C. § 934. The offense for which Appellant was charged and convicted involves *indecent* recording, which does not require sexually explicit images (pornography), but images of naked or underwear clad genitalia, anus, buttock, or female areola or nipple. We find the distinction significant, and the fact that the search authorization in this case was premised on the search for child pornography impacts our analysis.

Injecting a reference to child pornography into the request for search authorization at best skewed the facts that were known at the time, and at worst amounted to a reckless misstatement of those facts. Under these circumstances, it is not objectively reasonable for those same law enforcement agents who mischaracterized the predicate evidence, together with others who were briefed that search authorization had been granted, to then reasonably and with good faith rely on the issuance of the search authorization (Mil. R. Evid. 311), or could reasonably believe the magistrate had a substantial basis to authorize the search when she had been misled about the nature of the evidence (*Carter/Perkins II*). We believe that the facts of this case fall squarely within the elements of *Leon* that would exclude the application of the good faith exception based on reckless or facially deficient affidavits used to establish probable cause.

Appellant made this same argument at trial, asserting that the offense charged was not child pornography and the affidavit did not mention any evidence of sexually explicit conduct. The military judge stated:

> [t]o me the issue is probable cause, nexus. What's specifically charged, criminally, is not as critical as . . . what we're talking about here as far as nexus and probable cause. And factually,

> the act of recording someone in a way that they shouldn't be rec-
> orded is similar enough that I'm – again, you [don't] need to
> spend – any time on that.

While we agree that indecent recording, as charged, is a crime, application of the nexus requirement is directly related to the evidence of the crime presented to the magistrate and the likelihood of Appellant acting in conformance with others who commit that type of crime. The case law concedes that a law enforcement officer's professional experience may be useful in establishing such a nexus—such as profiles of how those engaged in child pornography generally do not delete files, they maintain them—as SA MD testified and TSgt DD explicitly included in his affidavit. *See Leedy*, 65 M.J. at 215–16; *United States v. Macomber*, 67 M.J. 214, 220 (C.A.A.F. 2009) (profile alone without specific nexus to the person concerned cannot provide the sort of articulable facts necessary to find probable cause to search or seize).

In *Nieto*, the accused was reported to be using his cell phone to film or take pictures of individuals in bathroom stalls and the SA informed the magistrate that Soldiers generally download their photos to their laptops so that when they get to a place with Internet capability they can post them or share them. Additionally, the SA informed the magistrate as to the specific model of phone Nieto owned. There was no mention of Nieto owning a laptop. The CAAF held that a generalized profile without—at a minimum—evidence that Nieto actually downloaded images, illicit or otherwise, from his cell phone to his laptop provided no basis, substantial or otherwise, for the magistrate to conclude that probable cause existed to seize the laptop. *Nieto*, 76 M.J. at 707.

Here, TSgt DD had no knowledge that Appellant owned any computers, had ever downloaded anything from the camcorder ES reported seeing onto another device, knew any details as to the capacity of the camcorder, knew what type of media it relied on to store images, or if or how those images could be downloaded. Moreover, TSgt DD had no evidence that any images on the camcorder depicted ES naked, let alone engaged in sexually explicit conduct. Nevertheless, TSgt DD discussed with and later provided a written affidavit to the magistrate asserting that he believed evidence of Appellant's intent to manufacture child pornography was located in his residence.

Despite the absence of any direct evidence, TSgt DD sought search authorization for not just "the" camcorder, but any camera or electronic media that could contain evidence of child pornography. This conduct embodies the very language of *Leon* establishing where the good faith exception would not apply—recklessly omitting or misstating the information to obtain the authorization. It cannot be objectively reasonable for a law enforcement official to recklessly omit or misstate the information to obtain a search authorization, and

then reasonably and with good faith rely on the issuance of that search authorization or belief the magistrate had a substantial basis to authorize the search authorization. The dissent relies on the fact that both TSgt DD and the magistrate reasonably inferred that Appellant would download videos from his camcorder onto another device. That reasonable inference would require knowledge that Appellant had a device to download the camcorder to and there was no such evidence at the time the search authorization was sought and approved. Without any knowledge that Appellant possessed a computer, the inference that he was manufacturing child pornography was unreasonable. Under Mil. R. Evid. 311 and *Carter/Perkins II*, the elements of the good faith exception to the exclusionary rule are not met in this case and the evidence should have been suppressed.

Having found the military judge abused his discretion in denying the defense motion to suppress, Appellant is entitled to relief only if he can show material prejudice to a substantial right. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

The error here is of a "constitutional dimension." *Hoffmann*, 75 M.J. at 128. Constitutional error is harmless only when "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003)). The burden is on the Government to prove the constitutional error was harmless. *See Hoffmann,* 75 M.J. at 128. An error that "did not contribute to the verdict" is one which was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Id.* (quoting *Yates v. Evatt*, 500 U.S. 391 (1991)).

The search of Appellant's home yielded evidence that the Government used to establish Appellant's guilt to the indecent recording charge and specification. Based on the testimony of ES, she never saw a recording when Appellant was alleged to have held the camcorder over the shower curtain and knew that a video was on the camcorder on 20 April 2016. Accordingly, we find that the erroneous admission of evidence prejudiced Appellant with regard to the indecent recording charge and its specification.

**D. Post-Trial Processing Delay**

**1. Additional Facts**

Appellant's court-martial concluded on 2 September 2017. The convening authority took action on 27 December 2017 and the case was docketed with the court on 29 January 2018.

### 2. Law

In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the CAAF established a presumption of a facially unreasonable delay when "the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action[,]" and when "appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals."

Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533).

In *Moreno*, the CAAF identified three types of cognizable prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–40 (citations omitted).

In *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002), the CAAF recognized this court has the *de novo* power and responsibility to disapprove any portion of a sentence that it determines, on the basis of the entire record, should not be approved, even absent any actual prejudice.

### 3. Analysis

In this case there was a facially unreasonable delay of three days from action to docketing and three weeks from docketing to our decision. Appellant did not raise the action to docketing delay and as such asserts no prejudice and we find none. Appellant has also not asserted his right to speedy appellate review. We are mindful of the delay in issuing our opinion. As the CAAF themselves noted in *Nieto*, there was "tension" created by the *Hoffmann* and *Carter* opinions, and *Perkins II*, decided only three months ago, greatly impacted the completion of our appellate review. In light of the fact that further review will be required, we do not address the prejudice aspect at this time.

### III. Conclusion

The finding of guilty to the Specification of Charge I and to Charge I is **AFFIRMED**. The finding of guilty to the Specification of Charge II and to Charge II is **SET ASIDE.** The sentence is **SET ASIDE** and the case is returned to the Judge Advocate General for further processing consistent with this opinion. A rehearing is authorized. Article 66(e), UCMJ, 10 U.S.C. § 866(e).

LEWIS, Judge (concurring in part and dissenting in part and in the result):

I agree with my esteemed colleagues that (1) Appellant's trial defense counsel team effectively represented him when they elected not to file a speedy trial motion pursuant to Rule for Courts-Martial (R.C.M.) 707; (2) the military judge committed no error when he declined to perform an *in camera* review pursuant to Mil. R. Evid. 513; and (3) Appellant was not prejudiced and his due process rights were not violated by a facially unreasonable delay in the docketing of his case with this court.

Contrary to the majority opinion, I conclude the military judge did not abuse his discretion when he denied the Defense motion to suppress under the Fourth Amendment.[1] I find the military judge properly applied the good faith exception and permitted the Prosecution to introduce into evidence videos recovered from Appellant's computer that showed Appellant indecently recorded his 12-year-old stepdaughter, ES, on divers occasions.

Before the military judge denied the motion to suppress, he made extensive findings of fact in his 10-page written ruling. His ruling was also orally read into the record. His findings of fact are well supported by the record and not clearly erroneous. *See United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007) (citations omitted). I would adopt them in total. The majority opinion disagrees with the military judge's conclusion that there was "no evidence" that TSgt DD recklessly omitted or misstated any information in the affidavit. I believe the military judge did not misapprehend the law on the good faith exception when he determined that TSgt DD did not recklessly omit or misstate any information in his affidavit.

In my view, the military judge's ruling carefully considered the applicability of the good faith exception. His ruling correctly stated the four circumstances when the good faith exception cannot apply. *See United States v. Carter*, 54 M.J. 414, 419 (C.A.A.F. 2001) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Of the four circumstances set forth in *Leon*, only two—the first and third—are at issue in this appeal:

> (1) *False or reckless affidavit*—Where the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; . . .

---

[1] U.S. CONST. amend. IV.

> (3) *Facially deficient affidavit*—Where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; . . .

*Id.*[2] I will address these two circumstances in turn.

### 1. *False or reckless affidavit*

In evaluating whether the affidavit contained known false information or information the affiant knew was false, the military judge considered the sworn testimony of the affiant, Technical Sergeant (TSgt) DD, then an Air Force Office of Special Investigations (AFOSI) agent. The military judge characterized the affidavit as "balanced" with no "bad faith or illegality" by the participants. I agree with the military judge's characterizations of the affidavit and the affiant.

In contrast, the majority opinion finds TSgt DD's assertion in the affidavit that Appellant's home "could contain evidence of child pornography" to notably impact the analysis of the good faith exception. I come to a different conclusion and believe the best approach is to address whether the magistrate was misled by information that either (1) TSgt DD knew was false; or (2) would have known was false except for TSgt DD's reckless disregard for the truth. As the majority opinion only concludes that TSgt DD acted recklessly, I only address the second part of the above test.

On the second part, I cannot determine that TSgt DD acted with a reckless disregard for the truth. His affidavit used caveats like "alleged" offense, and "could" contain child pornography. TSgt DD indicated he was seeking evidence of Appellant's "intent" to manufacture child pornography. In the affidavit, TSgt DD did not exaggerate or mischaracterize the facts that ES reported. At best, TSgt DD's word choice of "child pornography" constituted mere negligence in understanding the elements of the offenses being investigated. In essence, TSgt DD's affidavit shows a poor understanding of when a depiction of a 12-year-old girl in some state of undressing or depicted showering would meet the

---

[2] Mil. R. Evid. 311(c)(3)(B)'s language "the individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause" has been interpreted by the CAAF as addressing the first and third prongs of *Leon*. *See Carter*, 54 M.J. at 421. Additionally, the CAAF recently described *Carter's* discussion of the good faith exception as a "thorough consideration of a complicated issue, giving effect to all parts of [Mil. R. Evid.] 311." *United States v. Perkins*, 78 M.J. 381, 388 (C.A.A.F. 2019).

legal definition of sexually explicit conduct.[3] In my view, this does not rise to the level of a reckless disregard for the truth.

Even if the majority opinion is correct that TSgt DD acted with a reckless disregard for the truth, this does not end the inquiry. The magistrate must also be misled by the information provided in the affidavit. The military judge dedicated a half page of his findings of fact to the military magistrate, Colonel (Col) SA. Col SA was trained by the legal office on her magistrate duties and over a two-year period participated in two search authorizations per month with law enforcement and judge advocates. During her motion testimony, Col SA recalled Appellant's alleged actions with ES correctly. Col SA had the impression that Appellant's behavior with ES spanned a period of time, that more than one incident involving a recording device occurred, and that Appellant asked ES to send him pictures of her unclothed. I find no indication that a poorly worded affidavit that described the alleged offense as involving "child pornography" in the affidavit misled this experienced military magistrate.

### 2. *Facially deficient affidavit*

The next question is whether the affidavit so lacked in indicia of probable cause as to render official belief in its existence entirely unreasonable. The facial deficiency litigated at trial, and at issue on appeal, centers around the failure of the affidavit to establish a nexus between Appellant's camcorder[4] and a computer where the videos were ultimately found. The challenge is not to the affidavit as a whole, but to a specific portion of it. *See Carter*, 54 M.J. at 421 (stating the affidavit must be more than a bare bones recital of conclusions).

The military judge looked closely at *United States v. Nieto*, where the United States Court of Appeals for the Armed Forces (CAAF) found the Government had not met its burden of establishing the good faith exception by a preponderance of the evidence. 76 M.J. 101, 108 (C.A.A.F. 2017). In *Neito*, there was no specific and particular nexus between a cellular phone and a laptop computer. *Id.* In his written ruling, the military judge recognized his ruling on the good faith exception was a "very close call" and that it "may appear

---

[3] *See, e.g., United States v. Piolunek*, 74 M.J. 107, 109 (C.A.A.F. 2015) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).

[4] The affidavit uses the word "camera" consistent with the AFOSI interview notes of ES. The military judge's ruling uses "camera," "video camera," and "camcorder" in different portions of his findings of fact. During motion practice, SA MD recalled ES describing the "camera" as a "small handheld camcorder" and "small camcorder with a flip out screen." TSgt DD similarly described the "camera" as a "small camcorder with the flip out screen."

inconsistent with the holding of the CAAF in *Nieto.*" The military judge reviewed both Col SA's perspective as the magistrate and TSgt DD's perspective before concluding "[t]he agents who executed search[5] would be objectively reasonable in believing [Col SA] had a 'substantial basis' for concluding there was probable cause . . . ." (Footnote added).

The military judge determined that Col SA applied "her own common sense belief and understanding regarding the likelihood of an individual transferring data from a camcorder to another media device . . . ." Col SA had already consulted with TSgt DD and a judge advocate before concluding Appellant "had likely backed up the video from the camera onto other devices." Backing up such material seemed reasonable as her impression was that Appellant's behavior "spanned a period of time" and "included more than one instance with the camcorder" and because Appellant asked for naked pictures of ES. Additionally, Col SA testified "based on my personal knowledge of electronic devices in general and including camcorders, I would expect that someone would back up videos or pictures taken on a camcorder, just as a rule."

The military judge also made findings of fact about TSgt DD's personal experience[6] that "camcorders were not typically used to watch videos." For that reason, TSgt DD "believed [Appellant] may have transferred videos onto other media devices."

The military judge ultimately concluded "there is no evidence that the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See Leon*, 468 U.S. at 923. The military judge rejected the challenge that the affidavit was facially deficient.

In my view, the military judge's decision on whether the affidavit was facially deficient was a very close call. *Nieto* is important precedent on the application of the good faith exception to digital evidence and the CAAF published *Nieto* two months prior to the search of Appellant's home. But the electronic

---

[5] During the search of Appellant's home, TSgt DD seized the computer from which the videos were eventually recovered.

[6] SA MD's motion testimony described a discussion at the AFOSI detachment on the scope of the search authorization. "We wanted to search for obviously the camcorder, but we also wanted to search for anything that could contain digital media because we felt it was likely that -- most camcorders, you have to attach them to a computer or other storage device to save videos." The military judge did not reference this testimony in his findings of fact. I include it only to provide context to the findings of fact the military judge made about TSgt DD's personal experience.

device in *Nieto* was different and to me that matters to the analysis of whether the good faith exception applies.

Both Col SA and TSgt DD independently believed it was common sense for Appellant to connect a camera or camcorder to another media device, like a computer. Col SA deemed this inference reasonable when she granted the search authorization. A judge advocate was present for the telephone discussion with Col SA and TSgt DD. The record shows no objections by this attorney. The military judge found the affidavit was not "so lacking in indicia of probable cause" for it to be objectively "entirely unreasonable." So too, I cannot conclude that a reasonably well-trained officer would have known that the search of a computer found inside Appellant's home near a camcorder was illegal despite the magistrate's authorization in light of all of the circumstances. *See Leon*, 468 U.S. at 922 n.23. Therefore, in my view, the military judge did not abuse his discretion in denying the defense motion to suppress and applying the good faith exception.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court