124

**UNITED STATES, Appellee,**

v.

**Simon J. CARDWELL, Specialist Four, U.S. Army Appellant.**

**No. 42,346.**
**SPCM 15920.**

U. S. Court of Military Appeals.

March 14, 1983.

For Appellant: *Captain Claudio F. Gnocchi* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major James F. Nagle* (on brief); *Captain Edwin S. Castle.*

For Appellee: *Captain Thomas E. Booth* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Captain Paul K. Cascio* (on brief) *Colonel James Kucera.*

*Opinion of the Court*

EVERETT, Chief Judge:

On January 6, 1981, a military judge sitting as a special court-martial convicted appellant, contrary to his pleas, of an assault with a means likely to inflict grievous bodily harm—namely, a beer bottle—in violation of Article 128 of the Uniform Code of Military Justice, 10 U.S.C. § 928. The judge sentenced appellant to a bad-conduct discharge, 2 months' confinement, partial monthly forfeitures for 5 months, and reduction to the lowest enlisted grade; but he recommended suspension of the discharge. However, the convening authority approved the sentence without suspending the discharge.

After the Court of Military Review affirmed the findings and sentence by a memorandum opinion, we granted the accused's petition for review to consider this specified issue:

DID THE STAFF JUDGE ADVOCATE INCORRECTLY ADVISE THE CONVENING AUTHORITY AS TO THE UNAVAILABILITY OF SELF–DEFENSE AS A DEFENSE FOR APPELLANT?

I

On November 14, 1980, Private Harris brought a chicken dinner into his barracks room and prepared to eat it. Appellant grabbed the chicken from him and after Harris had retrieved it, appellant made a provocative comment. Harris then moved towards Cardwell, who hit him "[w]ith his hand"; according to Harris, it "was [only] a medium blow" which "really" didn't hurt. In turn, Harris attempted to reach appellant's arms and "settle him down" and in so doing, he grabbed appellant by the throat and began choking him. Thereupon, Cardwell picked up a beer bottle lying near at hand and thrice struck Harris on the head with it. The third time the bottle broke and cut Harris.

The staff judge advocate's review, quoting from paragraph 216c of the Manual for Courts-Martial, United States, 1969 (Revised edition), noted that self-defense had been raised by the evidence. However, he called attention to testimony that Cardwell had been an aggressor and had "provoked the attack upon himself by grabbing PVT Harris' chicken and by punching PVT Harris."

Defense counsel submitted a rebuttal wherein he stated that "[t]he Staff Judge Advocate Review indicates that SP4 Cardwell was the aggressor in the case and therefore was not legally entitled to defend himself." He then pointed out

that the one or two blows [struck by appellant] . . . were not hard, did not hurt, and were in the nature of horseplay by an intoxicated person. These acts are not enough to delineate SP4 Cardwell as the aggressor when compared with the aggravated assault upon himself by PVT Harris. One can not reasonably foresee a forcible strangulation resulting from a simple punch in the side.

Further, defense counsel contended in his *Goode* response: [1]

The denial of SP4 Cardwell's legal right to defend himself was erroneous and unfair. The facts show that SP4 Cardwell was in a panic when the choking kept him from breathing or screaming out for help, and that SP4 Cardwell defended himself by the only means available. Fortunately for SP4 Cardwell, the beer bottle happened to be within arm's reach. PVT Harris did not stop strangling SP4 Cardwell until the third and final blow was inflicted in self defense. SP4 Cardwell acted only in self defense and should not have been denied the use of this defense.

To the rebuttal of his review the staff judge advocate offered a surrebuttal, which noted:

1. Paragraph 216c MCM (Rev.) provides in pertinent part:

"Self-defense is a defense of necessity. Unless the accused had withdrawn in

1. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

good faith, he is generally not entitled to this defense if he was an aggressor, engaged in mutual combat or provoked the attack upon himself."

2. The facts of this case show SP4 Cardwell to have been the aggressor and to have provoked the attack upon himself by the victim, PVT Harris. *In my opinion the MCM's language is clear that on these facts, the accused may not avail himself of this defense.* You, of course, must be convinced of this beyond a reasonable doubt before you take action in this case.

(Emphasis added.)

## II

■ The principles of law applicable to self-defense are well settled. Even a person who starts an affray is entitled to use self-defense when the opposing party escalates the level of the conflict. *United States v. Acosta-Vargas,* 13 U.S.C.M.A. 388, 32 C.M.R. 388 (1962); *United States v. Straub,* 12 U.S.C.M.A. 156, 30 C.M.R. 156 (1961). As stated in *Straub:*[2]

Generally speaking, a person is not entitled to use a dangerous weapon in self-defense where the attacking party is unarmed and commits a battery by means of his fist. And if he uses more force in any defense of his person than the law will allow, he becomes the aggressor. The theory of self-defense is protection and not aggression, and to keep the two in rough balance the force to repel should approximate the violence threatened.

■ Thus, if A strikes B a light blow with his fist and B retaliates with a knife thrust, A is entitled to use reasonable force in defending himself against such an attack, even though he was originally the aggressor. Similarly, the forcible strangulation to which appellant claims he was subjected by Harris constituted such an escalation of the conflict as to allow him to use reasonable force in defending against it. In the context of the barracks brawl in which Cardwell was engaged, it was arguable, at least, that appellant's use of the beer bottle was no more than reasonable force.

■ Portions of the review indicate that the staff judge advocate was fully aware of the applicable legal principles. However, when we consider that in the usual course of events the review, rebuttal, and surrebuttal would have been presented to the convening authority at the same time and that the surrebuttal states specifically that "the accused may not avail himself of" self-defense, we believe there was a reasonable risk that the convening authority might have misinterpreted the applicable legal principles. In short, the convening authority may have considered that appellant's initial aggression led to the forfeiture of all rights of self-defense against retaliation by his erstwhile victim.[3]

Taken as a whole, the staff judge advocate's review did not properly advise the convening authority of the applicable law and the misadvice may have adversely affected the convening authority's action. Defense counsel made every effort to assure that the convening authority was guided by correct legal principles, but he did not succeed. Accordingly, there should be a new review and action by the convening authority. *See, e.g., United States v. Bur-*

2. 12 U.S.C.M.A. at 160, 30 C.M.R. 160. Of course, one who has been attacked is not restricted in defending himself to the precise force threatened by the assailant. *See United States v. Acosta-Vargas,* 13 U.S.C.M.A. 388, 392, 32 C.M.R. 388, 392 (1962).

3. In *United States v. Brown,* 13 U.S.C.M.A. 485, 493, 33 C.M.R. 17, 25 (1963), Judge Kilday, writing for the majority, quoted some opinions which indicate that in order to rely on self-defense,

"the accused must be free from all fault in bringing on the difficulty, that is to say, he must not have done anything, or said anything, to provoke the difficulty."

In a situation like that of *Brown* itself, where the accused had entered willingly into combat with the expectation that deadly force might be employed, he is not allowed to claim self-defense. However, where an accused in his original attack has not employed deadly force and his adversary then escalates the conflict, he is entitled to use deadly force in his own defense, just as he would be if, after initially attacking, he had withdrawn completely from combat and was then attacked by his opponent.

*roughs,* 12 M.J. 380 (C.M.A.1982); *United States v. Cordova,* 7 M.J. 673 (A.C.M.R. 1979).

## III

The decision of the United States Army Court of Military Review is reversed. The action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to a convening authority for a new review and action.

Judges COOK and FLETCHER concur.