UNITED STATES, Appellant

v.

Terrel L. LEWIS, Private First Class
U.S. Army, Appellee

No. 07-5002

Crim. App. No. 20030835

United States Court of Appeals for the Armed Forces

Argued March 12, 2007

Decided June 13, 2007

STUCKY, J., delivered the opinion of the Court, in which EFFRON,
C.J., and BAKER, ERDMANN, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain Adam S. Kazin (argued); Colonel John W.
Miller II, Lieutenant Colonel Michele B. Shields, and Major Tami
L. Dillahunt (on brief).


For Appellee:  Captain Frank B. Ulmer (argued); Colonel John T.
Phelps II, Lieutenant Colonel Steven C. Henricks, and Major
Billy B. Ruhling II (on brief).

Amicus Curiae for Appellee:  Steven H. Goldblatt, Esq.
(supervising attorney), Brendon DeMay (law student), and Martin
A. Hewett (law student) (on brief) - for the Appellate
Litigation Program, Georgetown University Law Center.

Military Judge:  Robin L. Hall

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Lewis, No. 07-5002/AR

Judge STUCKY delivered the opinion of the Court.

The Judge Advocate General of the Army certified this case to this Court to determine whether the United States Army Court of Criminal Appeals incorrectly held that the military judge erred in refusing to give an instruction that a mutual combatant could regain the right to self-defense when the opposing party escalates the level of conflict, even when the combatant does not withdraw in good faith. We affirm the lower court and hold that Rule for Courts-Martial (R.C.M.) 916(e) is not inconsistent with prior precedent on the right to self-defense.

A general court-martial composed of officer and enlisted members convicted Appellee, contrary to his pleas, of aggravated assault with a dangerous weapon, a violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2000). The sentence adjudged by the court-martial, and approved by the convening authority, included a dishonorable discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. Citing United States v. Dearing, 63 M.J. 478 (C.A.A.F. 2006), the United States Army Court of Criminal Appeals reversed, holding that the military judge erred when she refused to instruct the members that a mutual combatant can regain the right to self-defense if the other side escalates the level of conflict.

2

United States v. Lewis, No. ARMY 20030835 (A. Ct. Crim. App. Oct. 18, 2006).

## I.

Appellee's conviction stems from a fight outside a German club that left two people with multiple stab wounds. Private Harvey, the alleged victim, does not remember the incident. He recalls going to an off-post club with his friend, Mr. Bryant. Private Harvey went into the club for a short time, then left the club and saw Appellee leaning against a vehicle outside the club. The next thing Private Harvey remembers is waking up on the ground, covered in blood, and somebody telling him not to die.

Several other people testified, including Mr. Bryant (Private Harvey's friend), Specialist Trexler (an acquaintance of the Appellee, who had just approached Appellee to ask him if he wanted to share a taxi ride back to the post), Mr. Vareen (a sixteen-year-old acquaintance of Private Harvey and Mr. Bryant), and Private First Class Felder.

The witnesses explained that the fight started when Mr. Bryant and Private Harvey approached Appellee and Specialist Trexler, who were waiting for a taxi, and asked for a cigarette. Appellee denied having a cigarette.

Specialist Trexler testified that, when denied a cigarette, Private Harvey started to throw a punch, but Appellee charged

him and both ended up on the ground.  Private First Class Felder saw Private Harvey pick Appellee up and "slam" Appellee to the ground.  Mr. Bryant, Mr. Vareen, and Private First Class Felder all recall seeing Appellee and Private Harvey on the ground, with Appellee on the bottom and Private Harvey on the top.  Mr. Bryant described the fracas as looking "like they were wrestling."  Private First Class Felder recalled Private Harvey punching Appellee in the face and torso and "beating him up."  He testified Private Harvey was "basically just winning -- winning the fight."

Mr. Bryant testified he noticed Private Harvey was not moving, so he entered the fight and kicked Appellee in the head.  Mr. Vareen recalls that Mr. Bryant, who is a powerlifter, kicked Appellee in the face four or five times as Appellee laid on the ground with Private Harvey on top of him.  Private First Class Felder also recalled Mr. Bryant joined the fight and kicked Appellee in the face.

Mr. Vareen testified that Appellee had Private Harvey in a headlock with his left arm and stabbed Private Harvey "about sixteen or seventeen times" with a knife held in his right hand.  Private First Class Felder also recalled seeing Appellee stab Private Harvey in the upper back area "probably eight to ten" times after Mr. Bryant had entered the fight.

4

Specialist Trexler testified he got between Mr. Bryant and Appellee in order to stop the fight.  He said when Appellee was able to get up from the ground, they immediately left the club's parking lot.  Mr. Vareen also testified that Appellee stopped stabbing Private Harvey once he was able to get up.

It is not surprising there is differing testimony from eyewitnesses and those involved in the fight; however, there is some evidence upon which the members could rely, if they chose, to find that Appellee and Private Harvey were engaged in mutual combat and that Appellee defended himself.

The military judge determined that the evidence presented raised the special defense of self-defense, and instructed the members on the issue.  The certified question here is whether the instruction given was correct.  The military judge instructed:

> There exists evidence in this case that the accused may have been a person who voluntarily engaged in mutual fighting.  A person who voluntarily engaged in mutual fighting, is not entitled to self defense <u>unless he previously withdrew in good faith.</u>  The burden of proof on this issue is on the prosecution.  If you are convinced beyond a reasonable doubt that <u>the accused voluntarily engaged in mutual fighting, then you have found that the accused gave up the right to self defense</u>.

Emphasis added.

Appellee's civilian defense counsel objected to this language, arguing that a combatant engaged in mutual fighting is

not required to withdraw in good faith to assert the right to self-defense, when the situation escalates to the point that the combatant is in fear of death or grievous bodily harm. The military judge disagreed, saying she did not believe the law on self-defense changed when a mutual fight escalates. She said "It's mutual combat or it's not mutual combat." Without the benefit of the defense-requested instruction, the members convicted Appellee of aggravated assault with a dangerous weapon for stabbing Private Harvey, a lesser included charge of the attempted murder with which he was originally charged. The members acquitted Appellee of stabbing Mr. Bryant.

The Army Court of Criminal Appeals found that the military judge erred and set aside the findings and sentence. Lewis, No. ARMY 20030835, slip op. at 7. The Judge Advocate General of the Army certified the issue to this Court.

## II.

A military judge is required to instruct the members on special (affirmative) defenses "in issue." R.C.M. 920(e)(3). A matter is considered "in issue" when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose." R.C.M. 920(e) Discussion; United States v. Gillenwater, 43 M.J. 10, 13 (C.A.A.F. 1995). Self-defense is considered a special defense, because "although not denying that the accused committed the

6

objective acts constituting the offense charged, [self-defense] denies, wholly or partially, criminal responsibility for those acts."  R.C.M. 916(a).

If an instruction is mandatory, as here, this Court will review allegations of error under a de novo standard of review. United States v. Bean, 62 M.J. 264, 266 (C.A.A.F. 2005); United States v. Forbes, 61 M.J. 354, 357 (C.A.A.F. 2005).  When the instructional error raises constitutional implications, the error is tested for prejudice using a "harmless beyond a reasonable doubt" standard.  United States v. Wolford, 62 M.J. 418, 420 (C.A.A.F. 2006).  "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'"  United States v. Kreutzer, 61 M.J. 293, 298 (C.A.A.F. 2005) (quoting United States v. Kaiser, 58 M.J. 146, 149 (C.A.A.F. 2003)).

The Government challenges the Court of Criminal Appeals' conclusion that the military judge improperly instructed the members on the issue of self-defense.  It argues that R.C.M. 916(e)(4) precludes the use of self-defense in any situation where the accused was an aggressor or provoked the attack, and did not first withdraw in good faith after the aggression, fight, or provocation.  It further argued that R.C.M. 916(e)(4) directly conflicts with this Court's precedents, United States

7

v. Cardwell, 15 M.J. 124 (C.M.A. 1983), and Dearing, 63 M.J. at 478.  Appellant argues that the Rule is not substantive criminal law and because the President has the power under Article 36, UCMJ, 10 U.S.C. § 836 (2000), to promulgate rules establishing court-martial procedure and evidence, both Cardwell and Dearing must be overruled.  See United States v. Czeschin, 56 M.J. 346, 348 (C.A.A.F. 2002) (an unambiguous presidential rule granting greater rights than a higher source governs, unless it contradicts express statutory language); cf. Ellis v. Jacob, 26 M.J. 90, 92 (C.M.A. 1988) (President's rulemaking authority does not extend to substantive military criminal law).

In Cardwell, a case decided prior to the promulgation of the Rules for Courts-Martial, we applied common law principles of self-defense to an aggressor, holding that he had the right to use self-defense when the opposing party escalated the level of the conflict.  15 M.J. at 126.  In Dearing, we held, consistent with Cardwell, that it was error for the military judge to refuse to instruct that if a conflict escalates, the initial aggressor is entitled to defend himself.  63 M.J. at 482-84.  The Government essentially recognizes Dearing as controlling in the instant case, because, as noted above, it argues that the decision is in conflict with R.C.M. 916(e)(4) and should be overruled.

United States v. Lewis, No. 07-5002/AR

We need not reach the issue of the extent of the President's power to promulgate R.C.M. 916(e)(4), because we find no conflict between the Rule and either Cardwell or Dearing.

We use well-established principles of statutory construction to construe provisions in the Manual for Courts-Martial. United States v. McNutt, 62 M.J. 16, 20 n.27 (C.A.A.F. 2005); United States v. Lucas, 1 C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951). Statutory construction begins with a look at the plain language of a rule. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241-42 (1989). The plain language will control, unless use of the plain language would lead to an absurd result. United States v. Martinelli, 62 M.J. 52, 81 n.24 (C.A.A.F. 2005) (Crawford, J., dissenting) ("'When the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'" (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000))); see also Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) (bankruptcy statute, although grammatically awkward, is not ambiguous and should be enforced according to its plain meaning, as long as that result is not absurd).

R.C.M. 916(e)(4) provides:

The right to self-defense is lost and the
defenses described in subsections (e)(1), (2),
and (3) of this rule shall not apply if the
accused was an aggressor, engaged in mutual
combat, or provoked the attack which gave rise to
the apprehension [that the accused was about to
suffer death or grievous bodily harm], unless the
accused had withdrawn in good faith after the
aggression, combat, or provocation and before the
offense alleged occurred.

While R.C.M. 916(e)(4) sets out a duty to withdraw under certain circumstances in order to avail oneself of the defense of self-defense, it does not address either escalation in general or the specific situation in which the original aggressor or someone engaged in mutual combat is not able to "withdraw[] in good faith."  The Rule's silence regarding an inability to withdraw creates an ambiguity similar to those we resolved in Cardwell and Dearing through an application of common law self-defense principles.

As we said in Cardwell, "The principles of law applicable to self-defense are well settled.  Even a person who starts an affray is entitled to use self-defense when the opposing party escalates the level of the conflict."  15 M.J. at 126.

In this case, there was evidence that Private Harvey was on top of Appellee, punching him to the point that it looked to a witness that Private Harvey was "winning the fight."  Here, the members could have found that Appellee could not withdraw, even

if he wanted to.  When Mr. Bryant, a competitive powerlifter, entered the fray and delivered kicks to Appellee's head and face the members could have found that Appellee was unable to withdraw, even if he wanted to.  He was on the ground, underneath Private Harvey.  Once Mr. Bryant escalated the fight to the level that Appellee could reasonably apprehend he would suffer death or grievous bodily injury from kicks to his head and punches to his body, Appellee was entitled, under our decision in Dearing, to defend himself even if he was the original aggressor or was engaged in mutual combat, as long as he responded in a manner proportionate to the threat he faced. United States v. Acosta-Vargas, 13.C.M.A. 388, 393, 32 C.M.R. 388, 393 (1962).  The fact that Appellee was placed in a situation in which it was physically impossible for him to withdraw, even if he had wanted to, is, as noted above, not addressed in R.C.M. 916(e)(4).  We do not believe that the President, in promulgating this Rule, intended the absurd result of requiring a mutual combatant or even an initial aggressor, to withdraw when he is physically incapable of doing so.  See United States v. Leonard, 21 M.J. 67, 69 (C.M.A. 1985) (Rules for Courts-Martial, like statutes, are to be construed reasonably, to effectuate the purposes of the particular rule.)

The self-defense instruction given in this case was therefore incomplete.  The military judge erred in not

instructing the members that a mutual combatant could regain the right to self-defense when the conflict is escalated or, as here, when he is unable to withdraw in good faith.

Having found instructional error, we test for prejudice. In Dearing, we concluded that the military judge's failure to give a complete and correct self-defense instruction created a constitutional error, requiring us to determine whether the error was harmless beyond a reasonable doubt. 63 M.J. at 484. In assessing prejudice under this standard, the Government must prove, beyond a reasonable doubt, that the instructional error did not contribute to the members' guilty findings. Id. (citing United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F. 2002)).

We conclude that the error was not harmless beyond a reasonable doubt. The incomplete instruction essentially undercut the defense theory and could very well have contributed to the finding of guilty. The members in this case were told that if they found Appellee was engaged in mutual combat or provoked the fight, he could not assert self-defense, if he did not first withdraw from the original fight. This incomplete instruction prevented Appellee from fully asserting that he rightfully defended himself (1) after an escalation of violence; and (2) when he was incapable of withdrawing in good faith.

III.

The decision of the United States Army Court of Criminal Appeals is affirmed.  The record of trial is returned to the Judge Advocate General of the Army.  A rehearing is authorized.