# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM 40682 (f rev)**

---

**UNITED STATES**
*Appellee*

**v.**

**John Andre N. MABIDA**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary[1]

Decided 27 April 2026

---

*Military Judge*: Joshua D. Rosen (arraignment); Brian M. Thompson (trial).

*Sentence*: Sentence adjudged 15 September 2023 by GCM convened at Keesler Air Force Base, Mississippi. Sentence entered by military judge on 15 November 2023: Confinement for four months, forfeiture of $500.00 pay per month for four months, reduction to E-2, and a reprimand.

*For Appellant*: Lieutenant Colonel Luke D. Wilson, USAF; Major Samantha P. Golseth, USAF; Scott R. Hockenberry, Esquire.

*For Appellee*: Colonel G. Matt Osborn, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, RAMÍREZ, and MORGAN, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge GRUEN and Judge MORGAN joined.

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RAMÍREZ, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of domestic violence on divers occasions in violation of Article 128b, UCMJ, 10 U.S.C. § 928b.[2,3] The military judge sentenced Appellant to confinement for four months, forfeiture of $500.00 pay per month for four months, reduction to the grade of E-2, and a reprimand. The convening authority took no action on the findings or the sentence, but provided the language for the reprimand.

On 2 September 2025, this court remanded the record of trial to the Chief Trial Judge, Air Force Trial Judiciary, for correction under Rule for Courts-Martial (R.C.M.) 1112(d) to account for a missing appellate exhibit. The record was subsequently corrected and re-docketed with this court.

Appellant raises three issues on appeal, which we have rephrased: (1) whether the military judge erred by denying Appellant's request for a self-defense instruction; (2) whether pervasive improper testimony was elicited and whether improper argument occurred; and (3) whether the military judge erred by allowing the Government to use leading questions in its direct examination of the victim.

During our Article 66, UCMJ, 10 U.S.C. § 866, review of Appellant's case, we discovered that the entry of judgment (EoJ) incorrectly reflects Specifications 2–9 of Charge III as violations of Article 128, UCMJ, 10 U.S.C. § 928, and not violations of Article 128b, UCMJ, as charged. Nonetheless, Specification 1 of Charge III and Charge III properly reflect a violation of Article 128b, UCMJ, on the EoJ, and are the only guilty findings. Appellant does not allege prejudice

---

[2] Unless otherwise noted, all references to the UCMJ, the Rules for Courts-Martial (R.C.M.), and the Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] As for the remaining charges and specifications, the panel members found Appellant not guilty of one specification of sexual assault upon YR in violation of Article 120, UCMJ, 10 U.S.C. § 920; one specification of larceny of YR's property in violation of Article 121, UCMJ, 10 U.S.C. § 921; and five other specifications of domestic violence against YR in violation of Article 128b, UCMJ. One specification of domestic violence against YR was merged with another domestic violence specification. Two specifications of domestic violence against YR in violation of Article 128b, UCMJ, were withdrawn and dismissed without prejudice after the military judge declared them a mistrial.

and we find none. The Statement of Trial Results properly reflects Specifications 1–9 of Charge III and Charge III as violations of Article 128b, UCMJ. Pursuant to R.C.M. 1111(c)(2), we modify the EoJ in our decretal paragraph below.

We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

YR is the named victim in this case. Appellant met YR[4] in June 2021, on a religious dating site. They met in person a few weeks later for their first date as Appellant was living in Mississippi and YR was living in Texas. It was YR's first real date. She had just turned 18 years old. Within four months of meeting on the dating site, they married on 1 October 2021.

Shortly after getting married, things turned violent. At one point Appellant believed that YR was a virgin prior to marriage. However, she had been with two men prior to meeting Appellant and when he found out, Appellant became very angry. Appellant found out about one of them by looking through YR's computer. Appellant's anger and subsequent behavior formed the basis for all charges and specifications in this case.

Between 21 October 2021 and 2 January 2022, there were several instances of Appellant physically abusing YR. One incident included Appellant hitting YR while they were in a car near a Mexican restaurant, at which time Appellant was punching YR on her body with a closed fist.

Throughout the month of December 2021, Appellant brought up YR's past and in doing so, he became angry. When this occurred, Appellant slapped her in the face so hard that she fell onto the floor—this occurred on multiple occasions. Similar conduct occurred near Christmas of this same year when YR told Appellant that she wanted a divorce.

Finally, on 28 December 2021, Appellant and YR drove from Biloxi, Mississippi, to Cyprus, Texas, to visit Appellant's family. During the drive, Appellant became angry again and again for the same reason, YR's past relationships. Appellant was driving and YR was in the passenger seat. When Appellant became angry, he punched YR; first on her thigh, then on her arm, then on her face. Before they arrived at his parent's house, Appellant stopped at a grocery store and bought makeup to cover up the bruising on YR's face that occurred during the approximate nine-hour car ride. These incidents formed the basis

---

[4] While the Charge Sheet refers to YR as YM, she had resumed her maiden name by the time of trial. The parties refer to her as YR and we will as well.

for the convicted offense of domestic violence against YR (Specification 1 of Charge III).

## II. DISCUSSION

### A. Self Defense Instruction

Appellant claims that the military judge erred by denying Appellant's request for the military judge to instruct the members on self-defense, and that he was prejudiced by the lack of such instruction.

#### 1. Additional Background

During opening statements, trial defense counsel stated, "[L]et's get one thing straight now. No member of the [D]efense is going to stand up here, look you in the eye, and tell you that [Appellant] was a perfect husband or even a good husband." He continued, "No member of the defense team is going to stand up here and look you in the eye and tell you that [Appellant] never laid hands on his wife. He did." Then trial defense counsel alleged that YR "on numerous occasions" "attacked" Appellant "and on at least one occasion placed their lives in danger." Trial defense counsel then outlined part of Specification 1 of Charge III, and admitted that as to the allegation concerning the road trip from Mississippi to Texas Appellant "strikes [YR] numerous times on the side of her body with his fist and with his open hand[, t]he evidence is going to show that is true." Trial defense counsel then claims that during the road trip, Appellant was arguing with YR and YR struck Appellant, grabbed the steering wheel, and "yanked it." He concluded that portion of the opening statement by conceding, once again, that Appellant hit YR and said, "it will be up to you to decide whether that was legally justified or not."

In YR's cross-examination, trial defense counsel asked YR about the road trip associated with Specification 1 of Charge III. He first confirmed that the bruises that had been shown to the panel in Prosecution Exhibit 2, during direct examination, coincided with those injuries. Then he asked YR whether she struck Appellant first. She answered, "No, I did not." He then asked her if she "grabbed and yanked the steering wheel." She answered, "No, I did not." Trial defense counsel then asked if Appellant struck her after she grabbed the steering wheel. Her answer was, "I didn't grab it."

At the conclusion of the evidence, the military judge stated, "I do not see that the issue of self-defense related to [Specification 1 of] Charge III has been raised by the evidence." Trial counsel agreed with the military judge. Trial defense counsel stated that there had been an "indicia of self-defense brought before the panel." He pointed to opening statements and his cross-examination of YR, but admitted that "she denied it." The military judge responded to trial defense counsel, explaining that "the standard that applies [requires there] to

be some evidence." The military judge continued that "[q]uestions are not evidence. Arguments/opening statements are not evidence." The military judge then stated, "You asked two questions; I checked about this. You received a 'no' to both questions and that was it."

### 2. Law

We review allegations of error concerning mandatory instructions under a de novo standard. *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007) (citations omitted). "When the instructional error raises constitutional implications, the error is tested for prejudice using a 'harmless beyond a reasonable doubt' standard." *Id.* (citation omitted). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to [an appellant's] conviction or sentence.'" *Id.* (citations omitted). A military judge's failure to provide a self-defense instruction, when warranted by the facts, creates a constitutional error. *Id.* at 89.

A military judge is to instruct panel members on any "special (affirmative) defenses" that are "in issue." *Id.* (citing R.C.M. 920(e)(3)). "A matter is considered 'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose.'" *Id.* (quoting R.C.M. 920(e), Discussion); *see also United States v. Gillenwater*, 43 M.J. 10, 13 (C.A.A.F. 1995) (discussing when a special defense is "in issue" within the meaning of R.C.M. 920(e)). Self-defense is considered a special (affirmative) defense, because while an accused does not deny that he committed the acts constituting the offense charged, the argument of self-defense denies "criminal responsibility for those acts." R.C.M. 916(a); R.C.M. 916(e). Nonetheless, in order for an accused to be entitled to a self-defense instruction, evidence must be presented "sufficient for a reasonable jury to find in [his] favor." *United States v. Schumacher*, 70 M.J. 387, 389 (C.A.A.F. 2011) (citations omitted).

### 3. Analysis

Appellant's assertion that a self-defense instruction was required is not supported by the facts in this case. Appellant twice claims in his brief that "during the [G]overnment['s] direct examination, trial counsel asked YR whether she had engaged in mutual shoving with Appellant," and again "some evidence of self-defense was additionally raised by trial counsel's questioning about whether YR had engaged in mutual shoving with Appellant." However, a review of YR's testimony clearly shows that the topic of "mutual shoving" never came up. Further, the word "mutual" does not appear in YR's direct examination or cross-examination. Appellant's attempt to inject the notion of "mutual shoving" into the trial transcript on appeal has no merit.

Further, Appellant points to nothing in the record to show "some evidence," which would warrant the self-defense instruction. Trial defense counsel's opening statements, argument, and questions posed to YR are not sufficient without more. We have previously explained that the unadopted question by counsel is not evidence. *United States v. Faile*, No. ACM S32098, 2013 CCA LEXIS 961, at \*16 (A.F. Ct. Crim. App. 7 Nov. 2013) (unpub. op.) (first citing *United States v. Barbeau*, 9 M.J. 569 (A.F.C.M.R. 1980); then citing *United States v. Watson*, 14 M.J. 593 (A.F.C.M.R. 1982)).

We have considered Appellant's reliance on the proposition of law that, "[a]ny doubt whether an instruction should be given should be resolved in favor of the accused." *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000) (citation omitted). However, *Davis* explains that there must be "some evidence" adduced during the court-martial which "reasonably raises" the issue concerning the instruction. *Id.* (citations omitted). Here the evidence does not exist in the record.

Additionally, we have also considered Appellant's theory of the case and conducted an independent review of the record, and find no evidence, much less "some evidence," required for the instruction. Simply put, there was no evidence presented sufficient for a reasonable panel to find in Appellant's favor regarding self-defense. Upon conducting this de novo review, we do not find the military judge committed error.

## B. Alleged Pervasive Improper Testimony and Argument

Appellant claims that he was prejudiced from pervasive improper evidence and argument. Specifically, Appellant alleges that "[t]rial counsel elicited or attempted to elicit improper testimony on at least [14] occasions," and "despite numerous admonitions from the military judge," "[t]he impropriety continued into closing statements where trial counsel made multiple blatantly improper arguments." Appellant alleges prejudice from the pervasive improper evidence and argument and asks the court to view them "cumulatively," and to assess whether the trial counsel committed prosecutorial misconduct.

### 1. Additional Background

Prior to trial, trial defense counsel sought and received a bill of particulars from the assistant trial counsel originally assigned to the case, but no longer assigned to this case at the time of trial. Throughout the trial, but especially during YR's testimony, trial defense counsel objected to various parts of her testimony based on evidentiary issues such as Mil. R. Evid. 404(b) (*Other Crimes, Wrongs, or Acts*), 304(d) (*Disclosure of Statements by the Accused and Derivative Evidence*), 802 (*Rule against Hearsay*), and other evidentiary matters. The vast majority of the objections, however, centered around evidence trial defense counsel did not receive through the bill of particulars. Each time

the evidence would be raised and trial defense counsel would object, the military judge would sustain the objection and either instruct the panel members to disregard the question and answer, or provide curative instructions.

In a hearing outside the presence of the court members, the military judge outlined YR's testimony and trial counsel's questions that had not been specifically provided to trial defense counsel in a specific notice pursuant to Mil. R. Evid. 404(b) or 304(d) or through the bill of particulars. In the same hearing, the military judge explained that he "instructed the members to disregard the questions and answers as they were not evidence that they should consider in this court-martial." The military judge included that he "instructed the members not to hold the calling of [Article] 39(a) sessions against either party." He then put on the record that he "asked the members if they understood and could follow both of these instructions, and they all answered affirmatively."

The military judge continued, by explaining to counsel that although there were "multiple incidents" of trial counsel eliciting non-noticed evidence, "the evidence itself was briefly mentioned and quickly stricken by the court's sustained objections to it and instructing the members in detail about what that means." The military judge then stated, "[G]iven the universe of charged domestic violence acts in this case, they are not so severe as to raise in the court's mind a concern that it would overcome the member's ability to focus on the charged offenses and follow the court's instructions to disregard them."

The military judge also found, and trial defense counsel conceded, that trial counsel was not intentionally or maliciously intending to offer non-noticed evidence during the court-martial.

Later in the trial however, the military judge decided to declare a mistrial as to Specification 2 of Charge III (Domestic Violence). He explained to the panel members:

> Members, you may recall earlier that I gave you an instruction that there had been presented to you some evidence that should not have been presented to you, and I instructed that the [G]overnment was instructed to ensure that that did not happen again. The court has determined that that has happened again and therefore as a remedy the court is going to dismiss Specification 2 of Charge III. You'll get instructions at the end of the court on how to do this, but just know for now that that specification is no longer before you for determination.

After additional similar evidentiary issues, the military judge considered the issue of another mistrial and ruled in Appellant's favor as to Specification 3 of Charge III (Domestic Violence). He instructed the panel members as follows:

7

> [M]embers, I have withdrawn from this court-martial, essentially dismissed from you your consideration, Specification 3 of Charge III. As a reminder, I also did the same as to Specification 2 of Charge III yesterday. I am cognizant of the fact that there were a number of times yesterday when I sustained objections and advised you to disregard questions and answers presented in court. Essentially the same goes for any evidence you heard that relates to Specifications 2 and 3 of Charge III. You are to disregard such evidence as it is not actual evidence properly before you. I have also mentioned on a number of other times that before you go into deliberations I will provide you instructions on the law. As part of that I will instruct you in more detail on what evidence you can and cannot consider when you deliberate.

The military judge continued as follows:

> An accused may be convicted based only on evidence before the court, not on evidence of a criminal general disposition. Each offense must stand on its own, and you must keep the evidence of each offense separate. Stated differently, if you find and believe that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense. As I mentioned, I expect that I will give you even more guidance on that for example, yesterday as to Specification 4 of Charge III you heard evidence of physical contact between the parties that was different from the language in that offense, "unlawfully striking her in the face with his hand." I am instructing you as to that specification and frankly all specifications you are to disregard any evidence of physical acts that do not track the language of what is actually charged in each specification unless I specifically instruct you otherwise. Understanding I will instruct you in more detail later on these matters, can every member follow the instructions I have given you to date and not consider and to put out of your mind any evidence I instruct you to disregard?

There was an affirmative response from all members.

When it came to closing arguments, trial defense counsel continued to object. At the conclusion of trial counsel's closing argument the military judge told trial counsel:

> Trial counsel, though I have not at this moment granted as a remedy the striking of your closing argument, I do instruct you to limit your rebuttal argument only to matters that are raised

by defense counsel in their closing argument. I will tell you that I will have a very, very short leash in terms of allowing you to make argument on rebuttal and will end it quickly. Therefore, if that informs your decision about how long your rebuttal argument is going to be, that may be appropriate.

The military judge followed this with an instruction to the panel members as to how to consider trial counsel's arguments.

Members, before we get to defense counsel's closing argument, I have some other matters to discuss with you. First, during trial counsel's closing argument he made reference to a slap in the face that the accused committed against the alleged victim on 11 November 2021 at a Mexican restaurant. There is no evidence before the court that that occurred and you are to disregard that statement of evidence and argument related to it. During trial counsel's closing argument, he mentioned that Father [G] knew that the alleged victim had been hurt. Again, there is no evidence before the court as to that and you are to disregard that evidence and argument. During trial counsel's closing argument, he referenced that on or about 25 or 26 November [2021] the accused threw water on the alleged victim as part of an event that occurred at that time. Again, there is no admissible evidence before you on that point and so I instruct you to disregard evidence as presented by trial counsel that the accused threw water on the alleged victim in order to wake her up or whatever you remember that evidence to be.

I'm going to give you another instruction as well. During arguments related to whether the alleged victim consented to sexual acts underlying [the Specification of] Charge I, trial counsel argued that the alleged victim submitted out of fear. In so doing trial counsel made reference to evidence underlying Charge III Specification 1, evidence that they also referenced to argue the accused is guilty of Charge III Specification 1. As I mentioned in my earlier instructions, if you find or believe that the accused is guilty of one offense, in this case Charge III Specification 1, you may not use that finding or belief alone as a basis for inferring, assuming, or proving that he committed any other offense, in this case [the Specification of] Charge I. The evidence that the [G]overnment asserts establishes the alleged victim's alleged fear may be relevant to the term consent as I have defined it for you, and I render no opinion whether that is true or not, but your findings on Charge III Specification 1, whatever they are, are to

> have no impact on your findings as to [the Specification to] Charge I. Each offense stands on its own. With that instruction and my instructions to you to disregard both during trial counsel's closing argument and the ones I related to you now, can you all follow my instructions?

There was an affirmative response from all members.

With the military judge having withdrawn and dismissed without prejudice from consideration Specifications 2 and 3 of Charge III, the members found Appellant not guilty of the remaining charges and specifications with the exception of Specification 1 of Charge III—domestic violence against his spouse YR by "unlawfully striking her body with his hand" on divers occasions—which trial defense counsel conceded that the acts occurred.

### 2. Law

We review prosecutorial misconduct and improper argument de novo. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019). Where, as here, trial defense counsel objected, an allegation of improper argument is reviewed to determine whether the military judge's ruling constitutes an abuse of discretion. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted).

Prosecutorial misconduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Id.* at 18 (citation omitted). "If proper objection is made, we review for prejudicial error." *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citation omitted).

If prosecutorial misconduct is found, we do not test "the number of legal norms violated but the impact of those violations on the trial which determines the appropriate remedy." *Id.* at 402 (citation omitted). "In assessing prejudice, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial." *Id.* (citation omitted). We "weigh three factors [in] determining whether trial counsel's conduct was prejudicial: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id.* (citation omitted). "[T]he third factor [alone] may so clearly favor the [G]overnment that the appellant cannot demonstrate prejudice." *Id.* (alterations in original) (citation omitted). Additionally, a "military judge's failure to offer any specific, timely curative instructions also weighs in favor of finding prejudice." *Id.* at 403.

### 3. Analysis

As we have done in other similar cases, we need not address whether trial counsel's actions were improper. *See United States v. Dodd*, No. ACM S32652, 2021 CCA LEXIS 481, at *7 (A.F. Ct. Crim. App. 22 Sep. 2021) (unpub. op.). Instead, we resolve this issue on the prejudice analysis. Appellant's entire argument as to this issue comprises two short paragraphs in his brief. He claims that "[e]rror is obvious. The question is really one of prejudice." However, he never explains what the prejudice was in this case. Instead, he simply writes, "[T]he severity and volume of the error should lead this [c]ourt to find prejudice." We do not.

In weighing the three *Andrews* factors to determine whether trial counsel's conduct was prejudicial, we will begin with the first factor, severity of trial counsel's misconduct, and the second factor, the measures adopted to cure the misconduct. We agree with the military judge and do not find that he abused his discretion. As the military judge said, "[G]iven the universe of charged domestic violence acts in this case, they are not so severe as to raise in the court's mind a concern that it would overcome the member's ability to focus on the charged offenses and follow the court's instructions to disregard them." Additionally, we agree with both the military judge and trial defense counsel that trial counsel was not intentionally or maliciously intending to offer unnoticed evidence during the court-martial. We find that while the number of issues that trial counsel caused were high, they were not intentional and not severe enough to taint the severity of the proceedings. As such, this factor does not favor either side.

As to the second factor, we note the military judge adopted several measures to cure the misconduct: the military judge sustained objections, told the panel members not to consider evidence, gave lengthy instructions regarding how to properly consider evidence, and asked the members if they could follow his instructions. Each member stated that they could. Finally, the miliary judge dismissed from the court members' consideration two specifications. The military judge levied these robust curative measures to ensure the force of the measures were sufficient to address the severity and number of errors. We find these curative measures were effective and this factor does not weigh in favor of Appellant.

Regarding the third factor, the weight of the evidence supporting the conviction, we find this factor also does not weigh in favor of Appellant. After the dismissal of two specifications, there were eight specifications left for the panel to consider. Of those eight, trial defense counsel conceded that Appellant committed the underlying acts as to one of the specifications. That left seven specifications. The panel found Appellant not guilty of each of those seven specifications. As to the one for which Appellant was convicted, Specification 1 of

Charge III, there was compelling evidence supporting the conviction. The allegations in this specification included that on or about 11 November 2021, Appellant struck YR while in Appellant's car at or near a Mexican restaurant; that on or about 28 December 2021, Appellant struck YR while driving from Mississippi to Texas; and that Appellant repeatedly struck YR throughout December 2021. Aside from trial defense counsel affirmatively telling the panel members that Appellant committed the acts as alleged during the road trip, there was also YR's sworn testimony, and photographic evidence of the assaults.

Upon consideration and weighing of the three factors in determining whether trial counsel's errors were prejudicial, we find Appellant was not prejudiced.

## C. Leading Questions on Direct Examination of Victim

Appellant claims that "it was error for the military judge to allow trial counsel to lead its primary witness through direct examination, particularly as a 'remedy' for the [G]overnment's own failure." Specifically, Appellant claims he "is aware of no case law that endorses the use of leading questions on direct as a prophylactic for the [G]overnment's eliciting of improper evidence." According to Appellant, the military judge committed error because his ruling violated Mil. R. Evid. 611(c), *Leading Questions*.

### 1. Additional Background

During the direct examination of YR, she began going into evidence, that while relevant, had not been properly noticed by trial counsel. After trial defense counsel objected, the military judge held a hearing outside the presence of the court members. In an effort to keep the trial moving along and prevent further unnoticed evidence admitted through YR's testimony, the military judge decided to "allow trial counsel some leeway to be more leading in his questions [as to YR] so that we stay focused on simply the charged offenses in this case." The military judge explained that "[m]ostly these issues are arising out of the testimony of the witness which, as you know, as a long-time counselor is never completely within control of either party." With this, trial defense counsel claimed that the military judge's ruling "allows trial counsel to make his job easier." As a response to this, the military judge made the following record:

> I will state for the record that I am going to exercise my discretion to give trial counsel some leeway to ask leading questions to direct the witness to the specific incidents that are charged in this case; not as to the specifics of the incident that the witness will then discuss. I frankly think that makes trial counsel's job harder because trial counsel then does not have the opportunity

to elicit sort of that interim evidence to set the scene or to establish some context which I think would probably make their case stronger as opposed to make their case weaker.

YR was still on the stand as this statement took place and the military judge spoke directly to her. He told her that it is "important that we keep this trial focused on the charges that are before us and consistent with the rulings that I have made in this case." He continued by explaining that "trial counsel is going to direct you to specific instances of the [C]harge." The military judge specifically directed YR as follows: "[F]ocus on answering the question from trial counsel regarding the incident or the situation that he's drawing your attention to, and that if you are confused about that, you can certainly ask him to repeat the question or allow him to ask additional questions." The military judge asked her if she understood this and she said yes.

As is relevant to this issue, Appellant points to the following questions and answers between trial counsel and YR that he alleges are leading questions:

[Trial Counsel (TC)]. When you guys got back to the hotel room that night, did things turn physical?

[YR]. The day after we saw his parents?

[TC]. Yes.

[YR]. Yes.

[TC]. Did he hit you?

[YR]. Yes, he did.

[TC]. Was he angry?

[YR]. Yes, he was.

[TC]. What was he angry about?

[YR]. He was angry about me leaving.

[TC]. He was angry about you leaving him to go from Biloxi back to Texas?

[YR]. Yes.

Additionally, Appellant points to the following:

[TC]. Do you recall around Christmas of 2021 a discussion between you and the accused about divorce?

[YR]. Yes.

[TC]. Do you remember telling him that you wanted one?

[YR]. Yes.

> [TC]. How did he respond?
>
> [YR]. He was very upset.
>
> [TC]. Did he slap you in the face?
>
> [YR]. He did.

Finally, Appellant points to the following questions and answers between trial counsel and YR:

> [TC]. Were you afraid that something might happen to you if you left?
>
> [YR]. Yes.
>
> [TC]. In your divorce case is child-support set by the state?
>
> [YR]. I'm sorry, what?
>
> [TC]. Is the amount of child-support set by the state?
>
> [YR]. Yes.
>
> [TC]. In December 2021, you said the physical abuse was near daily.
>
> [YR]. Yes.
>
> [TC]. Had it just become a normal part of your life at that point?
>
> [YR]. Yes.

**2. Law**

"We review a military judge's control of the mode of witness interrogation pursuant to [Mil. R. Evid.] 611 for abuse of discretion." *United States v. Brown*, 72 M.J. 359, 362 (C.A.A.F. 2013) (citations omitted).

"A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts." *United States v. Rudometkin*, 82 M.J. 396, 401 (C.A.A.F. 2022) (citations omitted).

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)). "The standard requires that the military judge be clearly wrong in his determination of the facts or that his decision be influenced by an erroneous view of the law." *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F.

2005) (footnote omitted). "When testing for an abuse of discretion, [a reviewing court] does not substitute its judgment for the military judge's." *United States v. Grant*, 38 M.J. 684, 688 (A.F.C.M.R. 1993).

Mil. R. Evid. 611(a) provides that "the military judge should exercise reasonable control over the mode of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time." Mil. R. Evid. 611(c) explains that "[l]eading questions should not be used on direct examination except as necessary to develop the witness' testimony." It goes on to state that "[o]rdinarily, the military judge should allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness or a witness identified with an adverse party." However, "the rule and the exception are not absolute, and it is within the sound discretion of the trial judge to permit such questions." *United States v. Mansfield*, 33 M.J. 972, 989 (A.F.C.M.R. 1991) (citations omitted).

"Leading questions may be defined as those which suggest to the witness the desired answer, or which assume to be proved a fact which is not proved, or which by stating a material fact, permit an answer by a simple yes or no." *Id.* A leading question is one "that suggests the answer to the person being interrogated." *Leading Question*, BLACK'S LAW DICTIONARY (12th ed. 2024).

### 3. Analysis

Appellant claims the military judge committed error because his ruling violated Mil. R. Evid. 611. Additionally, Appellant argues that "[p]rejudice is high in that this format essentially allowed trial counsel to state the substance of the testimony, and merely have a friendly witness agree with him. Prejudice may also be viewed cumulatively with other errors."

Of the questions above Appellant points to, only a few are truly leading questions. While the witness answered "yes" or "no" to a majority of the questions, there were only a few that actually suggested the desired answer.

Although allowing directed, pointed, or leading questions is not the norm during direct examination, upon considering that the abuse of discretion standard is a strict one, we cannot say the military judge abused his discretion.

Here, the military judge's ruling was predicated on correct findings of fact concerning the amount of different allegations and evidence of domestic violence coupled with a desire to ensure the witness testimony did not continue to stray beyond the areas trial defense counsel had notice of. The judge authorized leading questions in an effort to avoid additional errors which would have prejudiced Appellant. It is clear that the disconnect was between what evidence existed and what notice the original assistant trial counsel provided to trial defense counsel. There was a very fine line that the military judge had to contemplate as he came up with a solution. As the military judge articulated

his reasoning, he applied the correct legal principles to these facts, and we cannot say that his conclusion was clearly unreasonable. The decision to allow trial counsel to ask pointed questions was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.

A review of the record shows a myriad of requests for hearings outside the presence of the panel to discuss the difference between the testimony of YR and the notices that had been provided by the original assistant trial counsel. While everyone agreed that the new trial counsel was not asking inappropriate questions on purpose, the military judge saw that this was certainly slowing down the trial. Mil. R. Evid. 611(a) provides a military judge discretion over the mode of examining witnesses to avoid wasting time while allowing him to effectuate procedures for determining the truth. The military judge did just that. It is also important to note that trial counsel did not take advantage of this by simply putting words in YR's mouth during direct examination. As discussed above, out of all the questions that Appellant points to, very few of them actually suggested the answer.

Simply put, the military judge did not abuse his discretion.

### III. CONCLUSION

We modify the entry of judgment by excepting the number "128" under "Charge(s)" to Specifications 2–9 of Charge III and substituting them with the corresponding numbers listed under "Charge(s)" in the Statement of Trial Results. The findings, as reflected in the modified entry of judgment, are correct in law. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (*Manual for Courts-Martial, United States* (2024 ed.)). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings, as modified, and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court